ANGELO M. MANGIONE et al., Respondents, *v.* FRANK DIMINO et al., Defendants, and ANTHONY D. PASSERO et al., Appellants.

Fourth Department, May 25, 1972.

*Lines, Wilkens, Osborn & Beck* (*James A. Reed, Jr.,* of counsel), for appellants.

*Dominick J. Polizzi (David J. Angelone* and *Angelo G. Faraci* of counsel), for respondents.

CARDAMONE, J. At 9:30 P.M. on an August evening in 1969 plaintiffs Angelo and Theresa Mangione, as invited guests, attended a "pool splash party" at the home of the defendants Anthony and Theresa Passero. Shortly after they arrived, the defendants Dimino and Della Fave, also present as invited guests of the Passeros, began to engage in boisterous horseplay attempting to throw Angelo Mangione into the pool while he was fully clothed and resisting. Twice plaintiff eluded them. On the third try, at about 10:00 P.M., defendants Dimino and Della Fave threw the still resisting, fully-clothed plaintiff "all in a good-natured way" into the pool. The hosts, Mr. and Mrs. Passero, were present at all times and witnessed these happenings. They did nothing, however, either to restrain Dimino and Della Fave or to protect Angelo Mangione. As a result of being thrown into the pool plaintiff, Angelo Mangione, struck his right leg on the rail of the steps leading into it and claims serious permanent injuries and total disability. He and his wife seek damages from the Passeros as owners of the premises.

These facts have been drawn from the allegations contained in the plaintiffs' complaint. Since the case is before us on appeal from Special Term's denial of the motion of the defendants Passero to dismiss it, we must view these allegations in a light most favorable to the plaintiffs, and their complaint must be given the benefit of every reasonable intendment (*Dulberg* v. *Mock,* 1 N Y 2d 54). When so viewed, we conclude that the plaintiffs' complaint states a cause of action against the Passeros as owners of the pool premises.

A property owner, or one in control or possession of real property, has the duty to control the conduct of those whom he permits to enter upon it which he is required to exercise for the protection of others. This duty arises provided that the owner knows that he can and has the opportunity to control the third-parties' conduct and is reasonably aware of the necessity for such control (*De Ryss* v. *New York Cent. R. R. Co.,* 275 N. Y. 85). Section 318 of the Restatement of the Law of Torts (2d ed., 1965) which is entitled "Duty of Possessor of Land or Chattels to Control Conduct of Licensee" states: "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk

of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control ". In *De Ryss* the Court of Appeals expressly approved this rule of law embodied in the charge of the trial court (*De Ryss* v. *New York Cent. R. R. Co., supra,* pp. 93–94). Although the facts in *De Ryss* reveal an accidental shooting by a licensee who was duck hunting on railroad property causing the death of plaintiff on adjacent property, the broad language used regarding the owner's duty to control licensees on his land so as not to create an unreasonable risk of bodily harm to " others " plainly included those " others " also on the owner's premises. To construe " others " to whom the duty is owed as being only those outside the owner's premises finds no support in logic or justice.[1] Indeed, as Prosser points out, an increasing regard for human safety had led a number of courts to impose an obligation of reasonable care on an occupier of land for any active operation he carries on, for the protection of licensees on his land (Prosser, Law of Torts, [4th ed., 1971], § 60, p. 379).

It may be claimed that our determination will undermine the historic distinctions between invitees, licensees and outsiders to whom differing duties of care are owed by the owners of real property dependent upon the plaintiff's status. These ancient distinctions between licensees (social guests) and invitees have come under increasing criticism.[2] At least three States have

1. *De Rosa* v. *Fordham Univ.* (18 A D 2d 1056) also involved an injury to one not present on the defendant's premises. The court there found a duty imposed on the owner to control the conduct of those on its property for the protection of those outside. However, we do not read this as holding the duty of protection to be limited only to those outside the owner's property.

See, also, PJI 2:114.

2. In *Kermarec* v. *Compagnie Generale* (358 U. S. 625, 630–631) the United States Supreme Court stated their criticism as follows: " The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards ' imposing on owners and occupiers a single duty of reasonable care in all the circumstances ' ".

abolished them and now treat a social guest as an invitee (*Preston* v. *Sleziak,* 16 Mich. App. 18; *Rowland* v. *Christian,* 69 Cal. 2d 108; *Daire* v. *Southern Farm Bureau Cas. Ins. Co.,* 143 So. 2d 389 [La. App. 1962]; Conn. Gen. Stat., § 52–557a). Further, these distinctions which were evolved in the common law of England have now been abolished there by statute (Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2. ch. 31). The rule of law which holds that social guests are deserving of less protection than persons on the owner's premises on business is founded on historic concepts not valid today (see Prosser, Law of Torts, § 60 [4th ed.], pp. 378–379; Notes, 19 La. L. Rev. 906 [1959]; 22 Mo. L. Rev. 186 [1957]; 12 Rutgers L. Rev. 599 [1958]; 7 William and Mary L. Rev. 313 [1966]). However, it is not appropriate[3] nor necessary for us to so declare in this case.

We are concerned here solely with the duty of an owner respecting the *conduct of licensees* on his premises and not with the owner's duties with respect to the *physical conditions* existing thereon. The duty imposed on an owner to prevent an unreasonable risk of bodily harm on account of the conduct of licensees present on his property by his invitation must be exercised for the benefit of outsiders, licensees (the status which plaintiffs Angelo and Theresa Mangione occupied) or invitees (*De Ryss* v. *New York Cent. R. R. Co.,* 275 N. Y. 85, *supra*). The failure to control where such a duty has been found to exist gives rise to actionable liability (*Carmona* v. *Padilla,* 4 A D 2d 181).

Appellants' remaining contention that plaintiff assumed the risk of being thrown into the pool may not be determined as a matter of law. For the purpose of this motion it presents a question of fact to be passed upon by a jury (*Stevens* v. *Central School Dist. No. 1 of Town of Ramapo,* 25 A D 2d 871, affd. 21 N Y 2d 780; *McEvoy* v. *City of New York,* 266 App. Div. 445, affd. 292 N. Y. 654).

The order denying defendants-appellants' motion to dismiss the plaintiffs' complaint should be affirmed.

MARSH, J. P., WITMER, MOULE and HENRY, JJ., concur.

Order unanimously affirmed with costs.

---

3. Sixteen years ago the distinctions were considered to be working well in practice and better left alone (*Wilder* v. *Ayers,* 2 A D 2d 354, 356, affd. 3 N Y 2d 725). We note, however, that the Appellate Division, Second Department, in *Sideman* v. *Guttman* (38 A D 2d 420) has recommended that the Court of Appeals abolish the social guest rule.