BILLY E. PIERCE, JR. *v.* THOMAS D. WALTERS.

[No. 272A66. Filed June 8, 1972.]

*James H. Kelly,* of Martinsville, for appellant.

*Lawrence C. McTurnan, Thomas A. Withrow, Bredell, Martin & McTurnan,* of Indianapolis, *William H. Wehrle,* of Martinsville, for appellee.

LOWDERMILK, J.—This case comes to us for review on one issue only, that issue being "Is there any genuine issue as to material fact which would entitle plaintiff-appellant to trial by jury?"

Plaintiff-appellant at the time of the accident complained of was a ten year old boy who, with his father, went to visit his grandmother and step-grandfather, Thomas D. Walters, the defendant-appellee herein, on Mr. Walters' farm.

The boy's father, on the day in question, was working on the farm for the boy's grandfather. The father drove a truck down a road near the barn and a pond where it would be used in building a fence to close the pond off (we assume to keep livestock out of the pond and from muddying up the waters, as is the custom for modern farm ponds).

This was the 5th day of July, 1970, and at the time the pond dam had grown up with grass and weeds from three to six feet tall and it had not been mowed that season. The pond dam was approximately sixty feet in length; the pond was practically full of water and about eight feet deep at the time.

There were some fifteen grandchildren of the defendant-appellee on the premises, with his permission, including the plaintiff-appellant, Billy E. Pierce, Jr. The record is not clear as to just how many of these children were down at the spillway of the dam when plaintiff-appellant Billy E. Pierce, Jr.'s father admonished him to get off the spillway and stay away from that part of the farm that day. Upon being admonished Billy, Jr. immediately left the spillway and the father went about his work. The evidence is that the defendant-appellee, grandfather, overheard this admonishment of Billy, Jr. It was after this that the grandfather drove his pick up truck across the dam and spillway, for the first time in 1970, through the grass and high weeds, leaving the grass and high weeds mashed down where he had driven.

During the course of the morning the fence was built next to the highway, enclosing an area around the pond, and no mention was made of Billy, Jr.'s whereabouts during that time.

The fence was completed and the defendant-appellee had only one way to exit with his pick up truck and that was to

drive again across the levee and spillway where he had entered that morning and go to a gate on the other side thereof.

At the time he proceeded toward the spillway plaintiff-appellant's father started the motor on a large truck and there was also a tractor operating, all within one hundred feet of the dam and spillway, emitting enough noise that a person on the dam or spillway would not hear the movement or the quiet operation of a pick up's motor. Sometime while the fence was being built the plaintiff-appellant disobeyed the order of his father to stay away from the dam and had come back into the area, unknown to his father or the defendant-appellee. He was hunting frogs to shoot with a rifle.

The record is clear that plaintiff-appellant was hiding from his father in the tall grass and weeds at the time defendant-appellee drove back across the spillway and dam and ran over him. The record is silent as to when he began to hide, but knowing the habits of children, it is reasonable for us to assume that he started to hide from his father when the father started the large truck and was en route back to the house after the completion of the fence.

Depositions and interrogatories were taken and are a part of the record. From a reading of these we find that other of the fifteen children were in the yard, some were in the barn and some in the cornfield, all on the same farm.

It was on the above set of facts, including the complaint and the discovery, that defendant-appellee filed his motion for summary judgment, which was granted by the court.

We will now determine this appeal and answer the question presented in the first paragraph of this opinion.

In determining this question, our attention is first attracted to page six of the defendant-appellee's brief, wherein he states:

". . . The only question presented is whether defendant should have known the plaintiff was present. Obviously, had he known of plaintiff's presence, the grandfather would not have driven his truck over him. On the other hand, if

the grandfather had actual or constructive notice of the plaintiff's presence in the weeds in front of him, it would have been negligence to have continued without some precautionary measure acknowledging the presence of the plaintiff and reasonably designed to protect him from injury. . . ."

Though we do not agree with defendant-appellee that this is the only question at issue, we would agree that it is one of the questions. It appears to us that it is a question of fact as to whether or not the grandfather did know or should have known that the plaintiff was present and if the jury determined that the grandfather had actual or constructive notice of the plaintiff's presence that same jury would have the further duty to determine whether or not the grandfather had been willfully or wantonly negligent to such an extent as to allow the plaintiff's recovery.

The court, in *Indpls. etc. R. Co.* v. *Hubbard* (1905), 36 Ind. App. 160, 74 N. E. 535, said:

"Juries have the right to draw reasonable inferences from the facts proved. If evidence tends to prove the essential facts involved in the case it is sufficient."

Our holding the proposition should have been submitted to a jury to pass upon does not necessarily mean that the jury would necessarily find for the plaintiff.

In the case of *Indianapolis Saenger Chor, Inc.* v. *AFNB* (1971), 149 Ind. App. 665, 27 Ind. Dec. 475, 274 N. E. 2d 728, the court quoted the proper test for the giving of a peremptory instruction, in its quote from the case of *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734:

" 'When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. [Citing cases.]

" 'In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. [Citing cases.]' "

The law in Indiana is sufficiently well settled that a person who goes upon the premises of another at the invitation of the other, and even though he may be a relative, is a licensee, and the only duty of the owner of the property upon which the licensee enters is to refrain from willfully or intentionally injuring the licensee. Such law is so well established in this State that it needs no citation of authority.

It is our opinion that the fact the defendant-appellee heard the plaintiff-appellant's father admonish plaintiff-appellant to get away from the spillway and dam to remain away therefrom, when the plaintiff-appellant was a boy, ten years of age, and there were about fourteen other children on the farm that day, is a question of fact as to whether or not the defendant-appellee did act as a reasonable and prudent person would have acted when he drove back across the spillway and levee with his pick up truck. This is especially so when the pick up could not be heard for the roar of the big truck and the tractor within 80 to 100 feet thereof, and his actions in so driving back across the spillway and dam, knowing the boy might disobey the order given him and come back to hunt frogs and play next to the pond and yet try to remain out of the sight of his father, as boys will do, because of said admonishment, that the acts of the defendant-appellee might be considered wanton or willful if defendant-appellee did not first determine whether the plaintiff-appellant, or any of the other fourteen remaining children, were or might be hiding or loitering in the weeds and grass around the pond before he made his return trip across the spillway and levee in grass and weeds through which he could not see.

For the reasons hereinabove stated we are of the opinion

that there was a genuine issue of material fact which should have been heard by a jury.

Therefore, the judgment of the trial court is reversed and the cause is remanded for trial.

Robertson, P.J., concurs; Lybrook, J., concurs.

Note.—Reported in 283 N. E. 2d 560.