David L. MARTIN and Donna J. Martin, Appellants (Plaintiffs Below),

v.

Richard SHEA, Appellee (Defendants Below).

No. 1–881A253.

Court of Appeals of Indiana, First District.

March 1, 1982.
Rehearing Denied April 1, 1982.

Michael G. Naville, New Albany, for appellants.

Richard L. Mattox, Richard T. Mullineaux, Orbison, O'Connor, MacGreagor & Mattox, New Albany, for appellee.

ROBERTSON, Judge.

This action arose out of a lawsuit initiated on January 14, 1980, by David and Donna Martin (Martins) against Richard Shea (Shea) to recover for personal injuries and loss of consortium. Shea filed a motion to dismiss pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(6), for failure to state a claim, on January 25, 1980, which was denied on March 25, 1980. On January 27,

1981, Shea filed a motion to reconsider his motion to dismiss which was granted on January 28, 1981. The Martins filed an amended complaint on February 9, 1981, which was dismissed upon motion on April 15, 1981. The Martins then filed their notice of praecipe on June 22, 1981, and proceeded with this appeal.

We reverse and remand.

On June 23, 1979, David and Donna Martin attended a swimming pool party at the residence of William and Grace Shea in Clark County, Indiana, hosted by their son, Richard Shea. During the course of the evening several of the guests participated in acts of "horseplay" around the pool. David Martin did not participate in these acts of horseplay. However, as he stood near the corner of the pool he was struck from behind by one of the guests and consequently fell into the pool, striking his head on the bottom. As a result, he was rendered quadriplegic, and was totally and permanently disabled.

The Martins argue that the trial court erred as a matter of law in dismissing their amended complaint for failure to state a claim upon which relief can be granted. The Martins allege that the defendant, Richard Shea, as host of the pool party and being present at the time in question, had a duty to control the conduct of those using the premises, such that one guest while engaging in acts of horseplay would not cause serious injury to another guest who was not participating in such acts. The trial court dismissed the complaint on a T.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted. Our Supreme Court in *State v. Rankin*, (1973) 260 Ind. 228, 294 N.E.2d 604, specifically set forth the standard to be applied in reviewing dismissal actions under T.R. 12(B)(6). The Court stated that:

> [A] complaint is not subject to dismissal unless it appears to a certainty that plaintiff would not be entitled to relief under any set of facts.

In addition, the Court noted that this rule is based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. The Court went on to state that:

> When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted.

In the case at bar, no evidence was heard and no affidavits were submitted pertaining to the question raised by the motion to dismiss. Consequently, the crucial question to be answered is whether there exists any circumstances under which relief may be granted. Research reveals that this is a case of first impression in this state. We thus turn to an examination of similar Indiana cases and cases from other jurisdictions based upon similar facts.

There is a tendency to classify this case among the long line of premises liability cases. Most premises liability cases involve physical defects from which injury has been incurred by individuals coming onto the premises. Generally, in such cases, the standard of care owed to an individual is determined by utilizing the three-fold distinction among licensees, invitees, and trespassers. *See, Swanson v. Shroat* (1976) 169 Ind.App. 80, 345 N.E.2d 872. However, this classification scheme seems inappropriate in the present case since we are not dealing with a premises liability case in the traditional sense. Although both parties refer, in their briefs, to David Martin as a licensee, there is no stipulation or ruling by the trial court in this regard. Consequently, until such determination is made at the trial level, we are unpersuaded to designate Mr. Martin as a licensee for purposes of determining the requisite standard of care owed by the defendant, Richard Shea.

Our attention is focused upon whether under certain circumstances a host of a swimming pool party has a duty to control the conduct of those using his premises so as to prevent one guest while engaging in certain acts from seriously injuring another guest. Duties, the violation of which may constitute negligence, usually arise by operation of the common law and by statute.

*Snyder v. Mouser* (1977) 149 Ind.App. 334, 272 N.E.2d 627. Our courts have recognized the principles that a duty may arise out of the knowledge of certain situations and that violation of such duty will be negligence. In *Snyder, supra,* the court noted that upon review of a certain situation, a court may, after weighing the evidence, create a duty to fit the circumstances. Application of this principle is also demonstrated in the earlier case of *Vandalia R. Co. v. Duling* (1915) 60 Ind.App. 332, 109 N.E. 70. That case involved a railroad's liability for injuring animals belonging to another which had been allowed to enter onto the railroad's property, when the railroad had been previously warned that the animals were likely to be found there.[1]

A case involving a somewhat similar factual situation is that of *Glen Park Democratic Club, Inc., v. Kylsa* (1966) 139 Ind. App. 393, 213 N.E.2d 812. In *Glen Park, supra,* a proprietor of a restaurant and tavern was sued by a plaintiff who was injured as a result of an assault by two belligerent patrons. The plaintiff alleged that defendant failed to protect him from their unprovoked assault. Admitting that it could find no Indiana precedent involving those facts, the court, in affirming the plaintiff's verdict, relied upon general principles of law concerning innkeepers, as well as the Minnesota case of *Connolly v. Nicollet Hotel* (1959) 254 Minn. 373, 95 N.W.2d 657. *Connolly, supra,* involved injuries to a passing pedestrian on the street below a hotel who was injured by some rowdy patrons of the establishment. The defendants argued that they could not be held liable for the unauthorized acts of a third person who, while on their premises, caused injury to an occupant of a public sidewalk. In response to their argument the Court stated:

It may be briefly stated that, even though the plaintiff was not a patron or a guest of the defendants, a relationship existed between them at the time and place of the injury which gave rise to a

legal duty on the part of the defendants. That relationship imposed an affirmative duty upon the plaintiffs to guard the public from danger flowing from the use of their property by their guests and invitees, even though that use was not authorized by the defendants. There was a duty on the part of the defendants to members of the public at large to protect them from injury by forces set in motion as a result of the use which the defendants permitted to be made of their property. *Id.* at 667.

Other Indiana cases involving a duty to conform to a certain standard of conduct are *Cory v. Ray* (1944) 115 Ind.App. 50, 55 N.E.2d 117 and *Miller v. Griesel,* (1974) 261 Ind. 604, 308 N.E.2d 701. In *Cory, supra,* the court held that the operator of a place of public entertainment is required to use reasonable care to keep such place safe for patrons and for failing to do so may be held liable for injuries occasioned by his neglect. In *Miller, supra,* the court held that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a responsibility recognized by common law to supervise their charges.

A number of other jurisdictions have recognized a host's duty to conform to a certain standard of conduct so as to prevent injury to guests upon the premises. *See, Oettinger v. Stewart* (1944) 24 Cal.2d 133, 148 P.2d 19; *Mangione v. Dimino* (1972), 332 N.Y.S.2d 683, 39 A.D.2d 128; *Potts v. Amis* (1963), 62 Wash.2d 777, 384 P.2d 825. *Mangione v. Dimino, supra,* involved facts similar to those in the case at bar. In *Mangione,* the plaintiff's husband was thrown into the pool by other invited guests, and as a result, struck his leg on the rail of the steps leading into the pool causing permanent injuries. Defendants had witnessed these happenings and did

---

1. Support for this principle of law can also be found in *Lake Shore and Michigan Southern Railway Company v. Brown* (1908), 41 Ind. App. 435, 437, 84 N.E. 25, 26 in which court stated: "The law requires of every person that he shall exercise due care to avoid injury to others and to protect themselves, and the viligance required is always commensurate with the danger to be apprehended."

nothing to protect plaintiff. The Supreme Court Appellate Division upheld the lower court's decision and held that the complaint did state a cause of action. In doing so, the Court stated that:

> A property owner, or one in control or possession of real property, has the duty to control the conduct of those whom he permits to enter upon it, which he is required to exercise for the protection of others. *Id.* 332 N.Y.S.2d at 685.

Some jurisdictions have classified the distinction between condition of the premises and conduct of the defendant in terms of passive and active negligence. *See, Oettinger v. Stewart, supra.* The occupier's freedom from liability exists in the case of passive negligence or where the injury is caused by the unsafe condition of the premises. Where on the contrary, the injury results from the negligent acts of the occupier, this immunity disappears. *See also,* 156 A.L.R. 1221 (for further discussion of those cases following the active and passive theory of negligence).

An additional authority acknowledging general principles of law in regard to a duty to control conduct is the Restatement of Torts 2d (1965). Section 318 of the Restatement reads as follows:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so as to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.

The plaintiffs, David and Donna Martin base their complaint in this case upon general negligence standards in that the defendant, Richard Shea, had a duty to control the conduct of guests upon these premises. The Martins are not directing their claim against Shea because of some physical defect in the premises. According to the standards expressed in *State v. Rankin, supra,* a complaint should not be dismissed for failure to state a claim unless it appears from the face of the complaint that under no circumstances could relief be granted. It is evidence from the foregoing lines of authority that the present case does not fall within the *State v. Rankin* standards for dismissing a complaint based upon a Trial Rule 12(B)(6) motion. There is authority supporting the Martins's claim to warrant the existence of a cause of action against Shea. The question of whether the Martins prevail in that cause of action is not one to be decided by this court. For these reasons, we hold that the trial court erred as a matter of law in dismissing the Martins's complaint for failure to state a claim upon which relief can be granted under T.R. 12(B)(6). We remand this case back to the trial court for further proceedings not inconsistent with this opinion.

RATLIFF, P. J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

I must respectfully dissent from the majority opinion, because I believe general principles of premises liability are controlling.

It is undisputed that David Martin was a social guest of Richard Shea. Under Indiana law Mr. Martin was, therefore, a licensee, and Mr. Shea's duties toward him were limited. *Swanson v. Shroat,* (1976) 169 Ind. App. 80, 345 N.E.2d 872; *Fort Wayne National Bank v. Doctor,* (1971) 149 Ind.App. 365, 272 N.E.2d 876. It is presumed that the adult licensee will "take the premises as they are, *with all the uses to which the owner may subject them while there,* and that he will look after his own safety and welfare, and that he has discretion and judgment to do so." (Emphasis added.) *Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Means,* (1914) 59 Ind. App. 383, 405–06, 104 N.E. 785 (overruled by *Fort Wayne National Bank, supra,* to the extent it distinguished between active and

passive negligence); quoted in *Swanson, supra,* 169 Ind.App. at 89, 345 N.E.2d 872. Although the extent of the owner-occupier's duty toward the licensee has been variously described, the kinds of conduct for which he is liable have been categorized as positive wrongful acts, willful or wanton misconduct, and entrapment. *Fort Wayne National Bank, supra.* Negligence toward a licensee is not sufficient to impose liability.

In the case at bar, the Martins' complaint alleges only negligence. However, the majority holds that this is not a premises liability case in the traditional sense, and, therefore, the rules concerning the status of licensees do not apply. I find no basis for such a distinction in Indiana law and would treat this as a premises liability case.

The majority apparently believes that since Mr. Martin's injuries were the result of the activities taking place on the Shea premises, not from any defect in the condition of the premises, premises liability principles are inapplicable. There are two reasons why this distinction is inappropriate.

First, the theory of liability in this case is not significantly different from that of a "typical" premises liability case; in both the duties imposed on the owner or occupier are based on the defendant's right to control the premises. Any duty to control the conduct of another must be grounded in the right to control him. *See Sports, Inc. v. Gilbert,* Ind.App. 431 N.E.2d 534 (1982). Any right on the part of Mr. Shea to control his guests is derived from his right to control the property. It is anomalous to hold premises liability law inapplicable to a theory of liability intrinsically related to the control of land.

In *Sports, Inc., supra,* this court cited the Restatement (Second) of Torts § 315 (1965) for its statement of the general rule regarding liability for the actions of a third person.

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

In the case at bar, the crucial relationship is that between a social guest and an owner or occupier of land. In Indiana the relationship of host and guest gives no right to protection from obvious dangers, whether due to broken stairways, climbing trees, or unruly guests. It is well established that even young children are presumed to understand and appreciate the dangers of bodies of water. *Harness v. Churchmembers Life Insurance Company,* (1961) 241 Ind. 672, 175 N.E.2d 132; *Plotzki v. Standard Oil Company of Indiana,* (1950) 228 Ind. 518, 92 N.E.2d 632. *Barbre v. Indianapolis Water Company,* (1980) Ind.App., 400 N.E.2d 1142.

Secondly, this case is typical of premises liability cases in that the plaintiff's injury was allegedly caused by an act or omission of the defendant relating to a condition on his premises. The relative importance of the defendant's conduct and the condition of his premises in causing the plaintiff's injuries varies from case to case. In this case the horseplay which gave rise to the injury took place because there was a swimming pool on the premises; it was the swimming pool which made those activities so dangerous and so attractive to the guests. If Mr. Shea was negligent, it was the potential dangerousness of the swimming pool which made his conduct unreasonable. It makes no sense to separate Mr. Shea's activities from the condition and use of his land.

In Prosser's *Law of Torts* (4th ed. 1971) an owner or occupier's liability for injuries caused by activities carried out on the land is discussed in terms of traditional premises liability categories. Regarding the classification of a social guest as a licensee, Prosser states:

"The reason usually given is that the guest understands when he comes that he is to be placed on the same footing as one

of the family, and must take the premises as the occupier himself uses them, without any inspection or preparation for his safety; and that he also understands that he must take his chances as to any defective conditions unknown to the occupier, and is entitled at most to a warning of dangers that are known." (Footnote omitted.)

*Id.* 149 Ind.App. at 378–79, 272 N.E.2d 876. After discussing the various criticisms leveled at this rule and the traditional categories in general, Prosser states the general rule regarding liability for activities conducted on the premises:

"The licensee has no right to demand that the occupier change his method of conducting activities for his safety, and in the usual case, if he is fully informed as to what is going on or it is obvious to him, he has all that he is entitled to expect, and assumes the risk thereafter." (Footnote omitted.)

*Id.* at 380, 272 N.E.2d 876. In the case at bar, we are dealing with the obvious danger resulting from horseplay near a swimming pool, a situation falling squarely within the rule stated above.

I know of no Indiana cases which distinguish dangerous activities on the premises from dangerous conditions, and the majority cites none. However, several cases which have presented the opportunity to make such a distinction have been decided according to general premises liability law. In none of these cases were the premises defective, although some contained potentially dangerous conditions.

*Glen Park Democratic Club, Inc. v. Kylsa,* (1966) 139 Ind.App. 393, 213 N.E.2d 812, involved a tavern owner's duty to control invitees and protect them from each other. The plaintiff was injured by another patron who allegedly was known by the defendant to be violent; there was no alleged defect or dangerous condition in the premises themselves. Nevertheless, the case was de-

cided within the framework of general premises liability law. Its reliance on the Minnesota case of *Connolly v. Nicollet Hotel,* (1959) 254 Minn. 373, 95 N.W.2d 657, was limited to that court's discussion of the duty owed patrons and guests by a hotel operator who sells alcohol on the premises.[1]

A case with many parallels to the one before us is *Swanson v. Shroat,* (1976) 169 Ind.App. 80, 345 N.E.2d 872. In *Swanson,* the defendant's backyard was a common meeting place for neighborhood children. On the occasion in question, a group of children, including the ten-year-old plaintiff, was climbing the defendant's fence and swinging from a nearby tree limb to the concrete patio below. The defendant observed their play as she occasionally glanced out her window, but did not supervise or restrict them. The plaintiff slipped from the tree limb and fell to the patio. The court stated that the danger of playing on a tree and fence over a concrete patio was one which should have been obvious to the plaintiff; hence, the defendant had no duty to warn or supervise him. A swimming pool can also be viewed as a potentially dangerous condition the dangers of which are increased by certain forms of "play". Surely the duty to control and supervise adults is not greater than the duty to control and supervise children under similar circumstances.

In *Pierce v. Walters,* (1972) 152 Ind.App. 321, 283 N.E.2d 560, the ten-year-old plaintiff was hunting frogs in the tall weeds near a spillway where his father and grandfather were working. The grandfather, who owned the property, accidently ran into the child with his truck. The case focused not on the tall weeds as a dangerous condition, but on the grandfather's conduct. The court stated that "the only duty of the owner of the property upon which the licensee enters is to refrain from willfully or intentionally injuring the licensee". *Pierce,*

1. In *Connolly* the defendant hotel was held liable for injuries to passersby caused by its invitees who were throwing articles from the upper stories of the building to the street below. Since the plaintiff was not on the premises, he was not a trespasser or licensee. Hence, mere negligence was sufficient to impose liability. The impact of the hotel on adjoining public property took this case beyond general premises liability rules. *See* Prosser, *supra* at 351–57.

*supra* at 325, 283 N.E.2d 560. The court held that the jury should have been permitted to decide whether the grandfather had constructive notice that the child was present and whether he had acted *willfully and wantonly.* In short, the standard of care for carrying out an activity was no different from that for maintaining property.

I believe the cases above require affirmance of the trial court's judgment. It is clear that an owner or occupier of land is not required to make the premises safe for social guests, even though the required maintenance might be simple, inexpensive, and consistent with his own interests. If we do not expect the property owner to care for his own property, we should not require him to shoulder the more difficult responsibility of protecting his guests from each other. I would affirm the judgment of the trial court.