Marie PURSLEY, Individually and as Administratrix of the Estate of James A. Clark, Deceased, for the Benefit of his Heir, James W. CLARK, a Minor, Appellant (Plaintiff Below),

v.

FORD MOTOR COMPANY, Appellee (Defendant Below).

No. 2–1282A417.

Court of Appeals of Indiana, Second District.

April 18, 1984.

Rehearing Denied May 29, 1984.

Danford R. Due, Donn H. Wray, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellant.

James D. Witchger, Rocap, Rocap, Reese & Young, Indianapolis, for appellee.

SHIELDS, Judge.

Marie Pursley, individually and as Administratrix of the Estate of James A. Clark, (Pursley) appeals the entry of summary judgment against her in favor of Ford Motor Company (Ford) in her action for damages for personal injuries and for wrongful death. The issue before us is whether Ford owed a duty to Pursley to control the conduct of its employee, Campbell, i.e., his consumption of alcohol during working hours, to prevent him from thereafter proximately causing physical harm to Pursley and Clark.[1]

Judgment affirmed.

Harold Campbell (Campbell) was an employee of Ford on October 4, 1979. On that date he worked the evening shift at Ford. During his 7:30 p.m. lunch break, he consumed three beers at a local tavern. He also purchased a bottle of whiskey and drank it while completing his shift. After he left work at 11:30 p.m., Campbell visited two taverns and consumed additional alcohol. At approximately 2:00 a.m. on October 5, 1979, Campbell's car struck Pursley and James A. Clark on Shadeland Avenue in Indianapolis. Pursley's car had run out of gas; Clark was assisting her. At the time of the accident, Campbell was intoxicated. He left the scene and did not learn he had struck Pursley and Clark until several hours later. Clark died and Pursley was severely injured as a result of the accident.

Pursley, individually and as Administratrix of the Estate of James A. Clark, deceased, brought an action against Ford alleging Ford had failed to control Campbell's consumption of alcoholic beverages on Ford's premises. The Marion County Superior Court entered a summary judgment against Pursley, and, subsequently, denied her motion to correct error.

For this appeal, the parties stipulated, pursuant to Ind.Rules of Procedure, Appellate Rule 2(C), that Campbell was not an agent of Ford at the time of the accident and that the automobile he was driving was not owned by Ford. They further stipulated that the accident occurred on a public street, not on Ford's premises.

## DECISION

The purpose of a summary judgment is to terminate those causes of action which have no factual dispute and may be determined as a matter of law. *Perry v. Northern Indiana Public Service Co.,* (1982) Ind.App., 433 N.E.2d 44; *F.W. Means & Co. v. Carstens,* (1981) Ind.App., 428 N.E.2d 251. Such is the posture of the instant case. The question presented is whether Ford owed a duty to Pursley. The facts essential to that issue have been stipulated by the parties.[2] Therefore, the

---

1. We do not address the issue of proximate cause in this case.

2. Other facts stipulated by the parties include: Campbell had not consumed any alcoholic beverages before he reported to work on October 4, 1979. Campbell left work with another employee at 11:30 p.m. when his shift ended, in that employee's car. They went to the Torch Lounge where Campbell consumed part of a mixed drink. Campbell left the Torch Lounge, driving his own car at approximately midnight. Campbell testified that before the accident he vaguely remembered stopping at another lounge after he left the Torch Lounge.

The parties also agreed that Campbell and other Ford employees frequently drank alcoholic beverages clandestinely at the Ford plant prior to October 4, 1979; the employees brought their own liquor into the plant; Ford personnel were not permitted to search the employees' personal belongings; and Ford maintained a breathalyzer in the plant.

Additionally, the parties stipulated there were thousands of places where employees could secretly drink in the plant; Ford supervisors were not present at these locations; and Ford supervisors were not in the plant area where Campbell drank on October 4, 1979, nor were they at

sole issue for our determination, *i.e.*, the existence of a duty, is a question of law.

■ We agree with the parties that this action does not involve the doctrine of respondeat superior. Under that doctrine, an employer is liable for the torts of his employee committed while the employee is acting within the scope of his employment. *Eagle Motor Lines, Inc. v. Galloway*, (1981) Ind.App., 426 N.E.2d 1322; *State v. Gibbs*, (1975) 166 Ind.App. 387, 336 N.E.2d 703. Our courts have consistently held an employee is not within the scope of his employment while he is travelling to or from his employment. *Biel, Inc. v. Kirsch*, (1959) 240 Ind. 69, 161 N.E.2d 617; *Pace v. Couture*, (1971) 150 Ind.App. 220, 276 N.E.2d 213. In the instant case, Campbell had left work and was on his way home when the accident occurred. Hence, he was not within the scope of his employment.

Pursley argues that although she "has been unable to discover any Indiana cases directly on point factually" (Appellants' brief at 11), Indiana case law shows acceptance of the tort concept of third party liability, citing *Martin v. Shea*, (1982) Ind. App., 432 N.E.2d 46; *Sports, Inc. v. Gilbert*, (1982) Ind.App., 431 N.E.2d 534; and *Estate of Mathes v. Ireland*, (1981) Ind. App., 419 N.E.2d 782.

The plaintiffs in *Sports* brought an action for wrongful death and personal injuries resulting from an automobile accident. Sports, Inc. (defendant) owned a public automobile racetrack. Thomas Riggs, who was intoxicated, drove into Sports' parking lot and caused a minor collision. Sports' security guards investigated the accident

and allowed Riggs to leave the premises in his truck; another person was driving. Two miles from the racetrack Riggs' truck collided with plaintiffs' vehicle; Riggs was driving the truck when the accident occurred. This court reversed the judgment for plaintiffs and remanded with instructions to enter judgment for Sports. We held Sports did not owe a duty to plaintiffs to detain Riggs when it discovered him intoxicated on its property. However, in our discussion, this court acknowledged the majority of jurisdictions follow the principles of the Restatement (Second) of Torts concerning the duty to control the conduct of a third person.

In *Mathes*, plaintiff brought a wrongful death action against two psychiatric centers. The centers had treated Kenneth Pierce. Pierce was released by the centers and subsequently killed plaintiff's wife. In reversing the trial court's dismissal of the action as against defendant centers, this court held if the centers had taken charge of Pierce within the meaning of § 319 of Restatement (Second) of Torts,[3] and knew Pierce was dangerous, they had a duty to plaintiff to exercise reasonable care under the circumstances.

In *Martin*, a guest (plaintiff) was injured when another guest pushed him into their host's (defendant) swimming pool. In reversing the trial court's grant of defendant's motion for summary judgment, we held that under Restatement (Second) of Torts, § 318, a host has the duty to control his guests so as to prevent them from harming others.[4]

Although not cited by Pursley, in *Parr v. McDade*, (1974) 161 Ind.App. 106, 314 N.E.2d 768, Indiana appears to have

---

the Eastway Tavern during Campbell's lunch break.

**3.** The Restatement (Second) of Torts, § 319 states:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

**4.** Restatement (Second) of Torts, § 318 states:

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control."

adopted the rationale of Restatement (Second) of Torts, § 317.[5] In *Parr*, an apartment owner (defendant) furnished its employee resident manager with an open flame gas heater to heat the resident manager's apartment. The heater ignited some flammable material and caused a fire injuring another tenant (plaintiff). Thus, the injury occurred on employer's premises and involved his chattel. In affirming the judgment for the tenant and against the apartment owner this court relied, in part, upon the rule in § 317.

The *Sports, Mathis, Martin* and *Parr* cases support Pursley's position that Indiana has approved and, in cases, followed the third party liability tort concepts articulated by the Restatement (Second) of Torts. Therefore, we turn to the Restatement to determine the duty, if any, it would impose upon Ford under the facts of this case.

Restatement (Second) of Torts, § 315, states the general rule regarding the duty to control the conduct of a third person:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

The relationships which require the actor to control the third person's conduct are stated in §§ 316–319. *See* Comment (c) to Restatement (Second) of Torts, § 315. Those relationships are parent-child (§ 316), master-servant (§ 317), land possessor-licensee (§ 318), and custodian of a person with dangerous propensities (§ 319). Pursley claims the applicable section under the facts of this case is § 317.[6]

Section 317 provides:

"A master is under a duty to exercise reasonable care so to control his servant

---

5. Restatement (Second) of Torts, § 317 states: "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

   (a) the servant

   (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and

   (b) the master

   (i) knows or has reason to know that he has the ability to control his servant, and

   (ii) knows or should know of the necessity and opportunity for exercising such control."

6. Because Pursley bases her argument on § 317, we only address whether that section imposes a duty on Ford. We are aware, however, of case law from other jurisdictions that could be pertinent to the factual situation in the case before us. At least one court has relied on § 319 to impose liability on an employer for the tortious conduct of its employee occurring outside the scope of employment. In *Otis Engineering Corp. v. Clark*, No. C–1227, —— S.W.2d —— (Tex. November 30, 1983), the Supreme Court of Texas imposed a duty on an employer to control the conduct of its employee when the employer "takes charge" of the employee outside the usual employer-employee relationship. The employee became intoxicated at work; the employee's supervisor suggested he leave work before his

shift ended. Shortly after the employee left, he was involved in an automobile accident in which he and plaintiffs' wives were killed. The court reasoned the employer's duty is analogous to § 319 cases in which one takes charge of persons known to be dangerous.

We do not decide whether § 319 would impose a duty on Ford, because it was not argued by the parties and because there is no evidence Ford "took charge" of Campbell. We note, however, in *Sports, Inc. v. Gilbert*, 431 N.E.2d at 536, we pointed out "[t]he Comment and illustrations following [§ 319] address only situations in which a dangerous person is in the custody of someone else, as when a person is hospitalized due to a contagious disease or a mental illness manifested by violence. Cases that cite this section all deal with similar custodial situations."

For a related discussion, see *Baugher v. A. Hattersley & Sons, Inc.*, (1982) Ind.App., 436 N.E.2d 126. In *Baugher*, plaintiffs sued an employer, after its employee raped and beat the plaintiffs on the employer's premises. The plaintiffs in *Baugher* relied on *Estate of Mathes v. Ireland*, 419 N.E.2d 782, to support an extension of the employer's duties to the public. We upheld the trial court's determination the employer did not owe a duty to the plaintiffs. We distinguished *Mathes* and noted it dealt only with custodial situations and that the *Baugher* facts did not present a situation where one had taken charge of another within the meaning of Restatement (Second) of Torts, § 319. 436 N.E.2d at 128, n. 1.

while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) *the servant*

(i) *is upon the premises in possession of the master* or upon which the servant is privileged to enter only as his servant, or (ii) is *using a chattel of the master,* and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control."

(emphasis added.)

A plain reading of § 317 reveals it imposes a duty upon an employer to third persons with reference to an employee acting outside the scope of his employment in two circumstances: (1) if the employee is upon premises in possession of, or by the grace of, the employer or (2) if the employee is using the employer's chattel; in either circumstance, the employer must have knowledge of its ability, necessity and opportunity to control the employee. This plain reading is substantiated by Comment (b) to § 317 which explains:

"[T]he master as such is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the time using a chattel entrusted to him as servant. Thus, a factory owner is required to exercise his authority as master to prevent his servants, while in the factory yard during the lunch hour, from indulging in games involving an unreasonable risk of harm to persons outside the factor premises. He [the master] is not required, however, to exercise any control over the actions of his employees while on the public streets or in a neighboring restaurant during the lunch interval, even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist."

■ Ford and Pursley stipulated the accident did not occur on Ford's premises and Campbell was not using a chattel of Ford. Therefore, Ford did not owe a duty to Pursley to control the conduct of Campbell to prevent him from causing physical harm to Pursley and Clark within the meaning of Restatement (Second) of Torts, § 317.

The case law Pursley cites from other jurisdictions does not support her argument but rather is consistent with our plain reading of § 317. For example, in the following cases injury occurred on the *employer's premises,* or on premises the employee was privileged to enter by reason of his employment, *Fletcher v. Baltimore & Potomac Railroad Co.,* (1897) 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411 (defendant's employee threw timber from employer's train injuring plaintiff); *International Distributing Corp. v. American District Telegraph Co.,* (D.C.Cir.1977) 569 F.2d 136 (employer could be liable when employees stole goods from plaintiff's premises which they were privileged to enter by reason of their employment); *United States Lighterage Corp. v. Petterson Lighterage & Towing Corp.,* (2d Cir.1944) 142 F.2d 197 (defendant's employees smoking while in course of employment started fire on plaintiff's barge); *McArthur Jersey Farm Dairy, Inc. v. Burke,* (1970) Fla.Dist.Ct.App., 240 So.2d 198 (employer potentially liable for injuries inflicted by an off-duty employee driving recklessly on employer's premises); *Murray v. Modoc State Bank,* (1957) 181 Kan. 642, 313 P.2d 304 (Kansas Supreme Court held an employee was transacting business with the patron he injured even though the injury did not occur on the employer's premises; thus, the patron was within the portals of the bank as much as if he had stood at the teller's windows); *Palmer v. Keene Forestry Association,* (1921) 80 N.H. 68, 112 A. 798, (employee was upon premises as a result of employer's business); *Rafsky v. City of New York,* (1939) 257 App.Div. 855, 12 N.Y. S.2d 560 (employee lifeguard playing horse-

252

shoes at place of employment injured plaintiff); *Ford v. Grand Union Co.*, (1935) 268 N.Y. 243, 197 N.E. 266 (employees shooting firearms on employer's premises killed passerby), or involved the *employer's chattel, Marusa v. District of Columbia,* (D.C. Cir.1973) 484 F.2d 828; *McCrink v. City of New York,* (1947) 296 N.Y. 99, 71 N.E.2d 419 (in both cases employers were potentially liable for gunshot injuries inflicted by their employees, off-duty, intoxicated policemen who were required to carry their firearms at all times).

The trial court properly entered summary judgment for Ford, because Ford did not owe a duty to Pursley for Campbell's conduct that occurred off Ford's premises and did not involve a Ford chattel.

Judgment affirmed.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs in result.