David L. MARTIN and Donna J. Martin, Appellants (Plaintiffs Below),

v.

Richard SHEA, Appellee (Defendant Below).

No. 684S214.

Supreme Court of Indiana.

June 6, 1984.

Rehearing Denied Aug. 7, 1984.

Michael G. Naville, New Albany, for appellants.

Richard L. Mattox, Richard T. Mullineaux, Orbison, O'Connor MacGregor & Mattox, New Albany, for appellee.

ON CIVIL PETITION TO TRANSFER

PRENTICE, Justice.

This cause is before us upon the petition of the Defendant, Shea (Appellee), to transfer it from the Court of Appeals, First District, which reversed the judgment of the trial court sustaining the Defendant's

motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Ind.R.P.T.R. 12(B)(6). The decision and opinion of the Court of Appeals appears at 432 N.E.2d 46 and is now ordered vacated, and the Petition to Transfer is granted inasmuch as said decision of the Court of Appeals erroneously decided a new question of law, i.e., that one in control of real property has a duty to control the conduct of social guests, whom he has permitted to enter upon it, for the protection of other such guests.

On June 23, 1979, the Plaintiffs (Appellants) David Martin and Donna Martin, his wife, attended a swimming pool party hosted by the Defendant (Appellee) Richard Shea. During the course of the evening several of the guests participated in acts of "horseplay" around the pool. David Martin did not participate in these acts of horseplay. However, as he stood near the corner of the pool he was struck from behind by one of the guests and consequently fell into the pool, striking his head on the bottom. As a result, he was rendered quadriplegic and was totally and permanently disabled.

Plaintiffs argue that the trial court erred as a matter of law in dismissing their amended complaint for failure to state a claim upon which relief can be granted. They allege that the Defendant, as host of the pool party and being present at the time in question, had a duty to control the conduct of those using the premises, such that one guest while engaging in acts of horseplay would not cause serious injury to another guest who was not participating in such acts. The trial court dismissed the complaint on a T.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted. We held in *State v. Rankin,* (1973) 260 Ind. 228, 294 N.E.2d 604 that a complaint is not subject to dismissal under Trial Rule 12(B)(6) unless it appears to a certainty that plaintiff would not be entitled to relief under any set of facts and that this rule is based on so-called "notice pleadings" in which a plaintiff essentially need only plead the operative facts involved in the litigation.

■ When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted.

In the case at bar, no evidence was heard and no affidavits were submitted pertaining to the question raised by the motion to dismiss. Consequently, the crucial question to be answered is whether there exist any circumstances under which relief may be granted. Research reveals that this is a case of first impression in this state. We thus turn to an examination of similar Indiana cases and cases from other jurisdictions based upon similar facts.

■ Our Court of Appeals, First District, following the lead of other jurisdictions extended the law of business hosts and, with Judge Neal dissenting, held that the Defendant had a duty to control the conduct of his guests for their reciprocal safety. We have determined that the majority is in error and that this action is governed by the general principles of premises liability, as set forth in the dissenting opinion of Judge Neal, which we approve and adopt as our own, as follows:

"It is undisputed that David Martin was a social guest of Richard Shea. Under Indiana law Mr. Martin was, therefore, a licensee, and Mr. Shea's duties toward him were limited. *Swanson v. Shroat,* (1976) 169 Ind.App. 80, 345 N.E.2d 872; *Fort Wayne National Bank v. Doctor,* (1971) 149 Ind.App. 365, 272 N.E.2d 876. It is presumed that the adult licensee will 'take the premises as they are, *with all the uses to which the owner may subject them while there,* and that he will look after his own safety and welfare, and that he has discretion and judgment to do so.' (Emphasis added.) *Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Means,* (1914) 59 Ind.App. 383, 405–06, 104 N.E. 785 (overruled by *Fort Wayne National Bank, supra,* to the extent it distinguished between active and passive negligence); quoted in *Swanson, supra,*

169 Ind.App. at 89, 345 N.E.2d 872. Although the extent of the owner-occupier's duty toward the licensee has been variously described, the kinds of conduct for which he is liable have been categorized as positive wrongful acts, willful or wanton misconduct, and entrapment. *Fort Wayne National Bank, supra.* Negligence toward a licensee is not sufficient to impose liability."

The Martins alleged only negligence by Shea and contend that inasmuch as Mr. Martin's injuries were the result of activities taking place on the Shea premises, rather than a defect in their condition, premises liability principles are inapplicable. However, we agree with Judge Neal that there are two reasons why this distinction is inappropriate.

"First, the theory of liability in this case is not significantly different from that of a 'typical' premises liability case; in both the duties imposed on the owner or occupier are based on the defendant's right to control the premises. Any duty to control the conduct of another must be grounded in the right to control him. *See Sports, Inc. v. Gilbert,* Ind.App. 431 N.E.2d 534 (1982). Any right on the part of Mr. Shea to control his guests is derived from his right to control the property. It is anomalous to hold premises liability law inapplicable to a theory of liability intrinsically related to the control of land.

"In *Sports, Inc., supra,* this court cited the Restatement (Second) of Torts § 315 (1965) for its statement of the general rule regarding liability for the actions of a third person.

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.'

In the case at bar, the crucial relationship is that between a social guest and an owner or occupier of land. In Indiana the relationship of host and guest gives no right to protection from obvious dangers, whether due to broken stairways, climbing trees, or unruly guests. It is well established that even young children are presumed to understand and appreciate the dangers of bodies of water. *Harness v. Churchmembers Life Insurance Company,* (1961) 241 Ind. 672, 175 N.E.2d 132; *Plotzki v. Standard Oil Company of Indiana,* (1950) 228 Ind. 518, 92 N.E.2d 632. *Barbre v. Indianapolis Water Company,* (1980) Ind.App., 400 N.E.2d 1142.

"Secondly, this case is typical of premises liability cases in that the plaintiff's injury was allegedly caused by an act or omission of the defendant relating to a condition on his premises. The relative importance of the defendant's conduct and the condition of his premises in causing the plaintiff's injuries varies from case to case. In this case the horseplay which gave rise to the injury took place because there was a swimming pool on the premises; it was the swimming pool which made those activities so dangerous and so attractive to the guests. If Mr. Shea was negligent, it was the potential dangerousness of the swimming pool which made his conduct unreasonable. It makes no sense to separate Mr. Shea's activities from the condition and use of his land.

"In Prosser's *Law of Torts* (4th ed. 1971) an owner or occupier's liability for injuries caused by activities carried out on the land is discussed in terms of traditional premises liability categories. Regarding the classification of a social guest as a licensee, Prosser states:

'The reason usually given is that the guest understands when he comes that he is to be placed on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any inspection or preparation for his safety; and that he also understands that he must take his chances as to any defective conditions unknown to the occupier, and is entitled

at most to a warning of dangers that are known.' (Footnote omitted.)

*Id.* 149 Ind.App. at 378–79, 272 N.E.2d 876. After discussing the various criticisms leveled at this rule and the traditional categories in general, Prosser states the general rule regarding liability for activities conducted on the premises:

> 'The licensee has no right to demand that the occupier change his method of conducting activities for his safety, and in the usual case, if he is fully informed as to what is going on or it is obvious to him, he has all that he is entitled to expect, and assumes the risk thereafter.' (Footnote omitted.)

*Id.* at 380, 272 N.E.2d 876. In the case at bar, we are dealing with the obvious danger resulting from horseplay near a swimming pool, a situation falling squarely within the rule stated above.

"I know of no Indiana cases which distinguish dangerous activities on the premises from dangerous conditions, * * *. However, several cases which have presented the opportunity to make such a distinction have been decided according to general premises liability law. In none of these cases were the premises defective, although some contained potentially dangerous conditions.

"*Glen Park Democratic Club, Inc. v. Kylsa,* (1966) 139 Ind.App. 393, 213 N.E.2d 812, involved a tavern owner's duty to control invitees and protect them from each other. The plaintiff was injured by another patron who allegedly was known by the defendant to be violent; there was no alleged defect or dangerous condition in the premises themselves. Nevertheless, the case was decided within the framework of general premises liability law. Its reliance on the Minnesota case of *Connolly v. Nicollet Hotel,* (1959) 254 Minn. 373, 95 N.W.2d 657, was limited to that court's discussion of the duty owed patrons and guests by a hotel operator who sells alcohol on the premises.[1]

"A case with many parallels to the one before us is *Swanson v. Shroat,* (1976) 169 Ind.App. 80, 345 N.E.2d 872. In *Swanson,* the defendant's backyard was a common meeting place for neighborhood children. On the occasion in question, a group of children, including the ten-year-old plaintiff, was climbing the defendant's fence and swinging from a nearby tree limb to the concrete patio below. The defendant observed their play as she occasionally glanced out her window, but did not supervise or restrict them. The plaintiff slipped from the tree limb and fell to the patio. The court stated that the danger of playing on a tree and fence over a concrete patio was one which should have been obvious to the plaintiff; hence, the defendant had no duty to warn or supervise him. A swimming pool can also be viewed as a potentially dangerous condition the dangers of which are increased by certain forms of 'play'. Surely the duty to control and supervise adults is not greater than the duty to control and supervise children under similar circumstances.

"In *Pierce v. Walters,* (1972) 152 Ind. App. 321, 283 N.E.2d 560, the ten-year-old plaintiff was hunting frogs in the tall weeds near a spillway where his father and grandfather were working. The grandfather, who owned the property, accidently ran into the child with his truck. The case focused not on the tall weeds as a dangerous condition, but on the grandfather's conduct. The court stated that 'the only duty of the owner of the property upon which the licensee enters is to refrain from willfully or intentionally injuring the licensee'. *Pierce, supra* at 325, 283 N.E.2d 560. The court held that the jury should have been permitted to decide whether the grandfather had constructive notice that the child was present and whether he had acted *willfully and wantonly.* In short, the stan-

---

1. In *Connolly* the defendant hotel was held liable for injuries to passersby caused by its invitees who were throwing articles from the upper stories of the building to the street below. Since the plaintiff was not on the premises, he was not a trespasser or licensee. Hence, mere negligence was sufficient to impose liability. The impact of the hotel on adjoining public property took this case beyond general premises liability rules. *See* Prosser, *supra* at 351–57.

dard of care for carrying out an activity was no different from that for maintaining property.

"I believe the cases above require affirmance of the trial court's judgment. It is clear that an owner or occupier of land is not required to make the premises safe for social guests, even though the required maintenance might be simple, inexpensive, and consistent with his own interests. If we do not expect the property owner to care for his own property, we should not require him to shoulder the more difficult responsibility of protecting his guests from each other."

We find no error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER and PIVAR-NIK, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

It is an astounding notion to me that the host of a party in his own home has no legal duty to take reasonable measures to protect his invited guests from blackguards who would batter them. He is, after all, in control of the place and the people. A guest has a right to expect that the host will demand that such conduct, upon coming to his attention, cease, and to take reasonable measures to enforce that demand. A guest is dependent upon the host's discrete knowledge of the place and the people for this degree of protection for his person and his property there present. It is the relationship between persons which determines the legal duty, if any, of one to the other. *Miller v. Griesel,* (1974) 261 Ind. 604, 308 N.E.2d 701. That relationship here is such that it should give rise to a legal duty. I would hold that the trial court erred in dismissing appellants' complaint for failure to state a claim.