Jacqueline H. XAVER and Gerald E. Xaver, Appellants-Plaintiffs,

v.

William BLAZAK and Marlene Blazak, Appellees-Defendants.

No. 3–978A237.

Court of Appeals of Indiana, Third District.

June 28, 1979.

---

Goulet & Bradley, South Bend, for appellants-plaintiffs.

May, Searer, Oberfell & Helling, South Bend, for appellees-defendants.

STATON, Judge.

Jacqueline Xaver and her husband, Gerald Xaver, brought this action for money damages against William and Marlene Blazak. The Xavers alleged that, as a result of the Blazaks' negligence, Jacqueline Xaver fell and injured her ankle on the Blazaks' property. A jury trial commenced. At the close of the Xavers' case-in-chief, the trial court granted the Blazaks' motion for judgment on the evidence. The Xavers appeal.

We find no error and we affirm.

The facts relevant to the appeal are as follows: On the evening of September 18, 1975, a group of fellow employees had cocktails and dinner together. Jacqueline Xaver had two martinis before dinner, a glass of wine, and an after-dinner drink. Marlene Blazak invited the group, including Mrs. Xaver, to her home after dinner for a party. She gave directions to her home to everyone; she made no mention of a drainage ditch in her front yard.

Mrs. Xaver, who had never been to the Blazak home before, rode with her boss. After stopping at a liquor store to pick up some beer and liquor for the party, they proceeded to the Blazak residence and pulled into the driveway. They parked at the end of the right-hand side of the double-width driveway, where four cars were already parked, two abreast. The area was illuminated by lights on either side of the garage, as well as a post light in the front yard.

Mrs. Xaver opened the car door, got out of the car, and reached inside to get some beer off the front seat. While facing the car, she stepped backwards to close the car door. She apparently stepped into a drainage ditch which was located approximately 19 inches from the edge of the cement driveway. As a result of the fall, Mrs. Xaver fractured her leg above the ankle joint and suffers recurring problems with her leg.

The drainage ditch or "swale system," which ran under the Blazaks' driveway, was constructed by the county in 1973. The Blazaks were not permitted to fill in the ditch, but they did seed and sod the swale with the rest of their front yard.

At the close of the Xavers' case-in-chief, the trial court granted the Blazaks' motion for judgment on the evidence. On appeal, the Xavers claim that the granting of the motion was contrary to law.

■ In ruling on a defendant's motion for judgment on the evidence, the trial court must view the evidence and the inferences therefrom which favor the plaintiff's case. The trial court may grant the motion against the plaintiff if there is an absence of evidence or reasonable inference therefrom on at least one factual issue necessary to recovery by the plaintiff. Ind. Rules of Procedure, Trial Rule 50. The trial court must deny the motion if reasonable men may differ about the evidence, or if liability must be determined by resolving conflicting evidence. *Gilbert v. Stone City Const. Co., Inc.* (1976), Ind.App., 357 N.E.2d 738.

In the present action, the trial court granted the Blazaks' motion for judgment on the evidence because it found that the Xavers had produced no evidence showing that the Blazaks had violated their duty of care to Mrs. Xaver, a social guest.

On appeal, the Xavers argue that the evidence establishes that the Blazaks violated their duty of care to Mrs. Xaver under either of two standards: (1) the factors set out in § 342 of the *Restatement of Torts* 2d; or (2) the "entrapment-affirmative control of the instrument" test, a product of Indiana case law.

■ The duty of care owed by the Blazaks to Mrs. Xaver depends to a large extent on the relationship between them. The parties have stipulated that Mrs. Xaver was a social guest on the Blazaks' land. In Indiana a social guest on the land of another has the rights of a mere licensee, instead of those of an invitee. *Fort Wayne National Bank v. Doctor* (1971), 149 Ind.App. 365, 272 N.E.2d 876; *Olson v. Kushner* (1965), 138 Ind.App. 73, 211 N.E.2d 620.

■ Over the years, the courts in Indiana have recognized that a social guest, as a mere licensee, takes another's premises as he finds them. The owner or occupant of land is not liable for any defects in the condition of his land, and he does not have a duty to maintain his premises in a safe condition. *Doctor, supra; Olson, supra; Woodruff, Administratrix v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113. These same cases have recognized that the only affirmative duty a landowner owes to a licensee is to refrain from wilfully or intentionally injuring him. *See also Pierce v. Walters* (1972), 152 Ind.App. 321, 283 N.E.2d 560. The Court of Appeals has attempted to characterize that duty by analyzing and citing Indiana Supreme Court decisions. *Doctor, supra; Olson, supra.*

In *Doctor,* Judge Buchanan sought to describe the specific instances in which an owner or occupant of land owes a positive duty to a social guest or licensee. After surveying prior decisional law, he culled out three "tests" to apply when determining liability for a breach of that duty:

(1) the positive wrongful act test, as applied in *Woodruff, Administratrix v. Bowen, supra,* 34 N.E. 1113;

(2) the wilful or wanton misconduct test, set forth in *Lingenfelter v. Baltimore, etc., R. Co.* (1900), 154 Ind. 49, 55 N.E. 1021; and

(3) the entrapment-affirmative control of the instrument test, arising from language in *Pier v. Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255.

272 N.E.2d at 882. *See also Surratt v. Petrol, Inc.* (1974), 160 Ind.App. 479, 316 N.E.2d 453. All of these tests require conduct which may be characterized as active, affirmative, or positive. *Surratt, supra.*

■ In their brief, the Xavers sought to apply the "entrapment-affirmative control of the instrument" test to the Blazaks' conduct. They argue that, even though the Blazaks did not install the drainage ditch, they intentionally maintained it (sodding the area) with the hope of "disguising" it so

it would blend in with the rest of the lawn. This effort at disguising the ditch was described as "wilful conduct" which increased the risk of injury to unsuspecting visitors, particularly those arriving after dark.

We have no trouble concluding that the Blazaks' conduct in "maintaining" the drainage ditch was insufficient as a matter of law to impose liability upon them for Mrs. Xaver's fall. The Blazaks were not responsible for the construction of the ditch and were unable to exercise "positive control" over it by removing it from their lawn (filling it in, etc.). Merely sodding the ditch did not alter it in any way and could only have changed its actual appearance slightly. The ditch could hardly be characterized as a hidden trap, or a dangerous pitfall, into which Mrs. Xaver was led. There is nothing uncommon or unusual about a drainage ditch in one's front lawn. Indiana law does not impose a duty upon the Blazaks to safeguard licensees against the possibility of a fall into such a ditch. The trial court acted correctly when it granted the Blazaks' motion for judgment on the evidence in the absence of evidence establishing that the Blazaks' conduct violated a duty of care owed to a licensee.[1]

In their brief, the Xavers also seek to have us evaluate the Blazaks' conduct by applying the duty of care contained in the *Restatement of Torts* 2d, § 342.[2] Specifically, they claim the Blazaks knew the ditch posed an unreasonable risk of harm to a social guest who would arrive, after dark, and park in the driveway near the ditch. Yet Mrs. Blazak failed to warn Mrs. Xaver, either personally or by posting a sign or warning near the ditch. The Blazaks point out that the ditch was clearly visible during the day and was not inherently dangerous. Mrs. Xaver herself testified that she did not look behind her before she stepped into the ditch.

Our resolution of this question does not require our reexamination of the Blazaks' conduct. As has been pointed out in other relevant cases, the development of the law describing a landowner's duty of care toward a licensee has followed a tortuous course. However, Indiana decisional law has not yet adopted the *Restatement* standard for adult licensees.

In *Wozniczka v. McKean* (1969), 144 Ind. App. 471, 247 N.E.2d 215, the court cited § 342 of the *Restatement* as an extension of the general rule of law involving licensees, but only as applied to a situation involving a licensee who was a *non sui juris* child.[3]

---

1. In rendering its decision, the trial court referred to an Ohio decision which was on point. In that case a social guest had tripped in a foot-deep, saucer-shaped depression in defendants' lawn, upon leaving their house after dark. The court discussed the various theories advanced by both parties and denied recovery, since the depression was not a trap involving an unreasonable risk of harm. *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 102 N.E.2d 453.

2. The *Restatement* contains the following language:

    "342. Dangerous Conditions Known to Possessor.

    "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

    "(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

    "(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved."

Comment (b) to that section would be relevant in this case:

    "b. If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it."

3. The rule of law stated in *Restatement of Torts* 2d, § 342 was analogized to language contained in *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, another case involving a child licensee. More importantly, the *Neal* case discussed the need for a landowner to use reasonable care to protect or warn licensees when the landowner maintained a *dangerous agency or instrument* on his premises, one which was reasonably certain to cause injury to those coming in contact therewith. This "test" resembles the "entrapment-positive control of the instrument" test discussed earlier, and does not represent a departure from the law discussed *supra*.

Then, in *Swanson v. Shroat* (1976), Ind. App., 345 N.E.2d 872, the court sought to require landowners to exercise a higher standard of care toward child licensees. The court cited the *Restatement of Torts* 2d, § 342 as a clear and concise statement of a desirable duty of care.[4]

 We do not feel that attempts to alter the duty of care owed to child licensees should be applied in cases involving adult licensees. The Indiana Supreme Court has not yet adopted the *Restatement of Torts* 2d, § 342; therefore, we are bound to apply only the recognized duty of care, as discussed earlier, when evaluating the Blazaks' conduct.

Finally, in their brief, the Blazaks cite a recent decision of this court which involved a business invitee, *Mullins v. Easton* (1978), Ind.App., 376 N.E.2d 1178. In that case, the court stated the following as a general rule of law:

> "Accordingly, the owner is under no legal duty to keep his premises free from pitfalls except to use reasonable care to warn the licensee of any concealed, dangerous conditions which are known to him. . . ." (Citations omitted.)[5]

376 N.E.2d at 1181.

It is unclear whether the rule refers to the "entrapment-affirmative control of the instrument" test or the duty of care contained in the *Restatement of Torts* 2d, § 342. Since the case was decided on principles involving business invitees, it must be construed as mere dicta. In any event, we will not treat it as a new statement of law, and we decline to attempt to apply it to the facts at hand.

In our previous discussion, we determined that the Xavers failed to show that the

Blazaks' conduct violated a duty of care owed to Mrs. Xaver, a licensee on the Blazaks' property. The trial court correctly granted the Blazaks' motion for judgment on the evidence.

The judgment of the trial court is affirmed.

HOFFMAN, J., concurs.

GARRARD, P. J., concurs in result.

---

**4.** In his concurring opinion in *Swanson v. Shroat*, Judge Buchanan pointed out:

> "Resort by the majority to the rule stated in section 342 of the *Restatement (Second) of Torts* as the basis for its opinion, represents a subtle transition from established Indiana law of non-host liability (with clearly defined exceptions) to a negligence standard . . . a transition without authority or justification in the law of this State. . . ." (Footnote omitted.)

345 N.E.2d at 881.

**5.** The citations in support of this proposition are inapposite. *Hammond v. Allegretti et al.* (1974), 262 Ind. 82, 311 N.E.2d 821, dealt with invitees only and cited the *Restatement of Torts* 2d, § 343, also dealing with invitees. *Woodruff, Administratrix v. Bowen, supra*, discussed only positive wrongful acts.