**Abby LOWDEN, a Minor by Richard LOWDEN and Janet Lowden Her Parents and Natural Guardians, and Richard Lowden and Janet Lowden, Individually Plaintiffs-Appellants,**

v.

**Dorothy LOWDEN, Defendant-Appellee.**

**No. 3–785–A–176.**

Court of Appeals of Indiana, Third District.

April 3, 1986.

John F. Lyons, Thomas M. Kimbrough, John M. Clifton, Jr., Fort Wayne, for plaintiffs-appellants.

Donald R. Clifford, Fort Wayne, for defendant-appellee.

STATON, Presiding Judge.

Abby Lowden, a minor, brought this action by her parents, Janet and Richard Lowden, who also sued individually, alleging that Dorothy Lowden, Abby's grandmother, negligently and carelessly injured Abby in Dorothy's home.

After cross-motions for summary judgment, the trial court granted summary judgment in favor of Dorothy. Abby and her parents appeal, raising one issue which we restate as follows:

Whether the trial court erred in granting summary judgment to Dorothy and denying it to Abby and her parents in that the trial court failed to conclude that Dorothy owed Abby a duty of reasonable care, that this duty was breached, and

that the breach proximately caused Abby's injuries.

We affirm.

The facts relevant to this appeal are as follows: Dorothy is Richard's mother and Abby's grandmother. On July 16, 1982, Dorothy invited Janet, Abby, and Abby's brother Christopher to her air-conditioned home to escape the day's heat and humidity. Abby was fourteen months old. Shortly after the three arrived, Janet left on an errand. While Janet was gone, Dorothy took the two children into the family room and read to them. She sat in a swivel rocking chair with Christopher beside her and Abby on her lap.

Sometime after Janet returned, Dorothy prepared dinner for the four of them. Janet did not pay Dorothy for the meal or for watching the children while she was gone. Abby finished eating before Dorothy and Janet, and they decided to let her go into the family room to play with her brother. Dorothy then finished dinner and boiled water to make herself a cup of coffee. Janet was eating a cookie and reading a newspaper article which Dorothy had given her.

Dorothy carried the cup of coffee into the family room and set it on the lamp table next to the swivel rocker where she had read to the children. She returned to the kitchen briefly to get a tray of cookies which she intended to place on the table by the coffee. A few seconds after she left the family room she and Janet heard Abby scream. They found her by the lamp table with the cup knocked over and coffee stains on her. The scalding coffee caused second and third degree burns on Abby's face, chest, and lower abdomen.

In reviewing a grant of summary judgment, we will reverse if the record discloses a genuine issue of material fact or an incorrect application of the law to the facts. *Jones v. City of Logansport*, (1982), Ind.App., 436 N.E.2d 1138, 1143, *reh. denied*, 439 N.E.2d 666. Abby and her parents argue that the trial court misapplied the law, in that it failed to conclude that Dorothy owed to Abby a duty of reasonable care. The trial court found instead that the sole duty that Dorothy owed to Abby was to refrain from willfully or wantonly injuring her, and that under the undisputed facts she had not breached this duty.

The duty of care owed by a landowner to those on his premises depends largely on the relationship between them. There is no dispute that Abby was a social guest in Dorothy's home, which would give her the rights of a mere licensee. *Fort Wayne National Bank v. Doctor* (1971), 149 Ind. App. 365, 272 N.E.2d 876. Generally in Indiana it is recognized that the only affirmative duty a landowner owes to a licensee is to refrain from willfully or intentionally injuring him. *Doctor, supra*, 272 N.E.2d 882; *Pierce v. Walters* (1972), 152 Ind.App. 321, 283 N.E.2d 560, 562. In *Doctor*, Judge Buchanan distilled from prior case law three tests for determining whether that duty had been breached:

(1) the positive wrongful act test, from *Woodruff, Administratrix v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113;

(2) the willful or wanton misconduct test, from *Lingenfelter v. Baltimore, etc., Ry. Co.* (1900), 154 Ind. 49, 55 N.E. 1021; and

(3) the entrapment-affirmative control of the instrument test, from *Pier v. Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255.

272 N.E.2d at 882.

With regard to children, however, Indiana courts have long recognized that landowners may sometimes owe them a higher duty of care, even when the children are trespassers. *See, e.g., Penso v. McCormick* (1890), 125 Ind. 116, 122, 25 N.E. 156, 158, 9 L.R.A. 313. In *Cleveland, etc., Ry. Co. v. Means* (1914), 59 Ind.App. 383, 104 N.E. 785, *reh. denied*, 59 Ind.App. 383, 108 N.E. 375, this court explained this distinction:

The owner of the premises owes the adult licensee no duty of active vigilance to discover his presence or his surroundings while on his premises by permission

only, because such adult is presumed to go there with the understanding that he will take the premises as they are, with all the uses to which the owner may subject them while there, and that he will look after his own safety and welfare, and that he has discretion and judgment to do so. In other words, the owner of the premises does not know and has no reason to anticipate that such adult licensee will place himself in a situation of peril. To indulge such an assumption when a child, a licensee of immature years, judgment, and discretion, is involved would be against our common understanding and reason and lacking in every element of humanity and justice.

104 N.E. 785, 792–93.

Two doctrines have developed under which landowners are held to a duty of ordinary or reasonable care with respect to children on their premises. The first is the attractive nuisance doctrine, which concerns trespassing children. Under this doctrine, the attractiveness of a dangerous condition or agency serves to justify the presence of the children on the landowner's premises and to charge the landowner with constructive knowledge of their presence. *Means, supra,* 104 N.E. at 794. Since Abby was a social guest, the attractive nuisance doctrine does not apply to this case.

A second doctrine has developed regarding dangerous conditions or agencies that could not be considered attractive nuisances. In *Fort Wayne and Northern Indiana Traction Co. v. Stark* (1920), 74 Ind. App. 669, 127 N.E. 460, this court stated:

Although the dangerous thing may not be what is termed an attractive nuisance—that is to say, may not have an especial attraction for children by reason of their childish instincts—yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them.

127 N.E. 461 (quoting 1 Thomp. Neg. 944). The duty owed by the landowner under this doctrine was more fully discussed by our Supreme Court in *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, *reh. denied* 111 N.E.2d 713, in which the court wrote:

It is the law in Indiana that persons who maintain a dangerous agency or instrument on their premises owe a duty to infants and adults alike to use reasonable care to protect or guard the dangerous agency or instrument, or to give timely warning of such condition after having knowledge of the same. And where the person could have reasonably anticipated that children or other persons might come into contact with the dangerous agency or instrument, and such a contact is reasonably sure to inflict serious injury, he should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact therewith. *Harris v. Indiana General Service Co.,* 1934, 206 Ind. 351, 189 N.E. 410.[1]

111 N.E.2d at 290.

■ Abby and her parents argue on appeal that Dorothy owed to Abby, a *non sui*

---

1. 1. This doctrine has also been expressed in the *Restatement of Torts* 2d, Sect. 342 as follows:

"Dangerous Conditions Known to Possessor. A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved. Comment (b) . . .
The possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assure that they will appreciate the full extent of the risk involved therein.

*juris* child licensee, a duty of reasonable care. As we have seen, such a duty is triggered, 1) when a dangerous condition or agency exists on the landowner's premises, 2) the landowner should reasonably anticipate that a person on his premises will come into contact with it, and, 3) such contact is reasonably likely to cause serious injury. *Neal, supra,* 111 N.E.2d at 290. *See also Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872, 877–78. Abby contends that the cup of coffee which Dorothy placed in her family room was such a dangerous agency, and that because Dorothy was aware of the propensities of young children to investigate, and pull at things around them she should reasonably have known that Abby would come into contact with it and be seriously injured. We do not agree.

■ Certainly Abby was seriously injured when she spilled the coffee down the front of her body, but we cannot say that a cup of coffee is inherently dangerous. In *Neal, supra,* the Indiana Supreme Court wrote:

"Inherently dangerous" means that danger is contained in and is an inherent part of the constitution of the instrumentality or condition itself, at all times, in such a manner as to require special precautions to prevent injury, not simply danger arising from mere casual or collateral negligence of others. *Brown v. City of Craig,* 1943, 350 Mo. 836, 168 S.W.2d 1080, 1082; *Emery v. Thompson,* 1941, 347 Mo. 494, 148 S.W.2d 479, 480; *Fackrell v. City of San Diego,* 1945, 26 Cal.2d 196, 157 P.2d 625, 629, 158 A.L.R. 773; *Vale v. Bonnett,* 1951, 89 U.S.App. D.C. 116, 191 F.2d 334, 339.

111 N.E.2d at 287.

This was an ordinary cup of coffee, such as one might find in any ordinary house-

hold, and not generally presenting such danger as to require taking special precautions to prevent injury. As a matter of law, we find that a cup of coffee is not a dangerous agency.

Abby and her parents argue that the cup of coffee was a dangerous agency as to Abby because of the propensity of small children to investigate and pull at things around them, and that for the same reason Dorothy should have known that it represented an unreasonable harm to Abby. Yet precisely because of these propensities, almost any household object may become the instrumentality of injury to a small child, and we simply cannot consider all such objects to be inherently dangerous.

■ Abby argues that even if Dorothy owed her no special duty because she was a *non sui juris* child, Dorothy's conduct satisfied both the entrapment-affirmative control of the instrument test and the positive wrongful act test set out in *Doctor.* The entrapment-affirmative control test very closely resembles the *Neal* test which we have just applied, in that it requires the existence of a concealed, dangerous condition. See *Xaver v. Blazak,* (1979), 181 Ind.App. 245, 391 N.E.2d 653, 656 n. 3. Since we have said that a cup of coffee is not a dangerous condition, this test is not met. Nor was Dorothy's placement of the cup of coffee a positive wrongful act. Both Richard and Janet Lowden admitted in their depositions that they did not believe that Dorothy had any wrongful intent, and we do not find that her conduct was wrongful.

We do not find Dorothy's conduct actionable under any legal theory. To hold Dorothy liable for placing a cup of coffee in the same room as Abby and briefly leaving the

---

Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover."
The *Restatement of Torts* 2d, Section 342 has not been adopted by the Indiana Supreme Court, and insofar as it applies to adults this court has refused to follow it. *Xaver v. Blazak* (1979), 181 Ind.App. 245, 391 N.E.2d 653, 657. With regard to children, however, it has been cited with

approval by this court, *see, e.g., Wozniczka v. McKean* (1969), 144 Ind.App. 471, 247 N.E.2d 215, 223, *trans. den.; Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872, 879; *P–M Gas and Wash Co., Inc. v. Smith* (1978), 178 Ind.App. 457, 383 N.E.2d 357, 359 *trans. den.;* and it does not appear to represent a departure from Indiana caselaw. *See Xaver v. Blazak, supra,* 391 N.E.2d 653, 656 n. 3.

room would be to make landowners absolute insurers of *non sui juris* child licensees on their property. The law of Indiana does not require as much. The trial court did not err in granting Dorothy's motion for summary judgment.

We affirm.

SHIELDS, J., (by designation) and GARRARD, J., concur.