Shawn KELLY, Appellant–Plaintiff,

v.

LADYWOOD APARTMENTS,
Appellee–Defendant.

No. 49A04–9302–CV–71.

Court of Appeals of Indiana,
Fourth District.

Nov. 8, 1993.

Rehearing Denied Jan. 7, 1994.

Richard Andrew Young, John P. Young, Young & Young, Indianapolis, for appellant-plaintiff.

Steven E. Springer, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellee-defendant.

CONOVER, Judge.

Plaintiff–Appellant Shawn Kelly appeals the trial court's grant of summary judgment in favor of Defendant–Appellee Ladywood Apartments in his personal injury case.

We affirm.

Kelly's sole issue for our review is whether the trial court erred in granting summary judgment.

On December 25, 1990, John Kelly brought Shawn, his six year old son, to a hill owned by Ladywood Apartments in Indianapolis to go sledding. When they arrived, approximately two to three inches of snow covered the ground. Several other

people were already there sledding. No warning signs were up prohibiting sledding. Ladywood had occasionally posted temporary fencing and "No Trespassing" signs in the area. As Shawn went down the hill, his sled struck a raised, snow-covered concrete manhole cover. It stood approximately six inches above the ground. He sustained serious permanent facial injuries.

On July 24, 1991, Kelly filed a complaint against Ladywood Apartments, alleging negligence. Subsequently, Ladywood moved for summary judgment. It relied on IND.CODE 14–2–6–3, Indiana's recreational land user statute, which it claimed limited its liability. In response, Kelly argued IC 14–2–6–3 did not limit Ladywood's liability, and even if it did, the sledding hill came within the attractive nuisance exception of the statute. After a hearing, the trial court granted Ladywood's motion.

Ind.Trial Rule 56(C) places the burden on the movant to establish the propriety of the entry of summary judgment. The moving party must make a prima facie showing that (1) there is no issue of material fact, and (2) the movant is entitled to judgment as a matter of law. If both requirements are met, the burden shifts to the nonmoving party to show specific facts indicating an issue of material fact. *Smith v. Amli Realty Co.* (1993), Ind.App., 614 N.E.2d 618, 620.

In determining whether summary judgment is appropriate, all facts asserted by the nonmoving party are accepted as true and any doubts are to be resolved in favor of the nonmoving party. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.* (1992), Ind.App., 590 N.E.2d 1067, 1071. Even if the facts are not in dispute, summary judgment is inappropriate if conflicting inferences could be drawn from those facts. *Newhouse v. Farmers National Bank* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is rarely appropriate in a negligence action. *Jump v. Bank of Versailles* (1992), Ind. App., 586 N.E.2d 873, 875. On appellate review the trial court's judgment will be affirmed if sustainable on any theory or

basis found in the designated record. *Smith,* 614 N.E.2d at 621.

Kelly contends IC 14–2–6–3 does not bar his claim as a matter of law because it applies only to rural outdoor activities, not sledding in urban areas. He claims applying the statute to the facts of this case would lift it from its natural place in Article 6 "Wild Animal Regulations–Possession and Transportation" to an application outside its thematic subject matter. Additionally, he claims the language in the first sentence of the statute does not limit the landowner's liability but only offers the recreational user no *assurance* the land is safe.

Almost all states have enacted recreational user statutes to reduce the tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he can successfully bar any entry to his property for enumerated recreational uses. 62 Am.Jur.2d *Premises Liability* § 119 (1990).

IC 14–2–6–3 contains general restrictions on a landowner's liability to persons using land for recreational activities. It reads:

Non–Liability of Landowners.—Any person who goes upon or through the premises including, but not as a limitation, lands, waters and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sightsee or for any other purposes, without the payment of monetary consideration, or with payment of monetary consideration directly or indirectly on his behalf by an agency of the state or federal government, is not thereby entitled to any assurance that the premises are safe for such purposes. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises: Provided, That the provisions of this section shall not be construed as affecting the existing case law of Indiana of liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to

invited guests nor shall this section be construed as to affect the attractive nuisance doctrine: Provided, further, That nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to person or property caused by the malicious or illegal acts of the owner or occupant.

When construing a statute, this court is guided by several rules of statutory construction. First, it must be noted that when a statute is clear and unambiguous, on its face, the court need not, and indeed may not, interpret the statute. *Whiteacre v. State of Indiana and Indiana Department of Natural Resources,* 619 N.E.2d 605, 606 (Ind.App. 1993). When a statute is ambiguous, the court must ascertain the intent of the legislature and interpret the statute to effectuate that intent. *Economy Oil Corp v. Indiana Dept. of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215, 218. When so doing, we read the statutes of an act as a whole and attempt to give effect to all provisions. *Id.* We may look to the titles and the headings of a statute in construing the intent of the legislature. *Indiana State Highway Com'n v. Bates & Rogers Const., Inc.* (1983), Ind.App., 448 N.E.2d 321, 324.

Consideration of the reasons and policy underlying a statute and of the goals sought to be achieved by the legislation is indispensable to our ascertainment of the legislature's intent. *Watkins v. Alvey* (1990), Ind.App., 549 N.E.2d 74, 76. Courts should also consider the consequence of a particular construction. *Lemert Engineering Company, Inc. v. Monroe Auto Equipment Co., Inc.* (1983), Ind.App., 444 N.E.2d 859, 862. A grant of immunity is in derogation of the common law and must therefore be strictly construed. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 800.

The Indiana legislature's purpose for enacting the recreational use statute is apparent: To encourage landowners to open their property to the public for recreational purposes free of charge. *Clem v. United States* (N.D.Ind.1985), 601 F.Supp. 835, 841.

We conclude the statute offers a dual protection for landowners who permit their land to be used by others for recreational purposes. The first sentence of the statute relates to injuries caused by the condition of the land, while the second sentence relates to injuries ... which are caused by acts of a recreational user. *Schwartz v. Zent* (1983), Ind.App., 448 N.E.2d 38, 39. To find otherwise would defeat the purpose of the statute and render the language of the third and fourth sentence of the statute meaningless. The third sentence provides in part: "The provisions of this section shall not be construed as affecting the existing case law of Indiana of liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to invited guests...." Clearly, the statute was to have an affect as to non-invitees.

The fourth sentence provides: "Nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to persons or property caused by the malicious or illegal acts of the owner or occupant." If owners are not being excused from liability for injuries caused by the condition of the premises, why include an exception or excuse from liability for injury to persons or property caused by malicious or illegal acts?

The only reasonable interpretation of the statute is that subject to the exceptions listed in the statute (attractive nuisance and malicious or illegal acts), the statute excuses an owner from liability to persons (other than business invitees and invited guests) using the property for recreational purposes without pay of monetary consideration, whether injury is caused by the condition of the land or by another recreational user.

This construction of the statute reflects its title and effectuates the purpose of the statute. Encouraging landowners to open their lands for recreational use is given best effect by construing the statute to provide the same protection for the landowner whether the injury is caused by a

condition of the land or by the acts of another recreational user.

We also find support for interpreting the statute to protect the landowner both for injuries by others or those caused by the condition of the land in case law. In *Schwartz,* 448 N.E.2d at 39, the court, although directly applying the second sentence of the statute, stated IC 14–2–6–3 provides a dual protection from liability for landowners who permit their land to be used by others for recreational purposes. The first sentence of the statute relates to injuries caused by the condition of the land, while the second sentence relates to injuries which are caused by acts of a recreational user. *Id.*

■▬▬▬ IC 14–2–6–3 applies to persons going onto the premises of another "to hunt, swim, trap camp, hike, sightsee, *or for any other purposes,...."* Sledding is an activity of the same kind or class as those specifically designated in the statute. The "for any other purpose" language makes it clear the list of enumerated activities was not intended by the legislature to be exhaustive. No language in the statute shows it was intended to apply to only rural and semi-rural lands, as Kelly suggests. While some of the recreational uses enumerated in IC 14–2–6–3 are typically rural pursuits, others such as sightseeing, swimming, and fishing are frequently enjoyed within city limits. The terms "for other purposes" expands the class of activities to similar pursuits, which may be either rural or urban or both.

Given the intent to the legislature to encourage landowners to open their property to the public for recreational purposes free of charge, we find limiting the statute to rural areas would negate our legislature's intent. Therefore, the trial court did not err in applying the statute to the facts of this case.

Kelly argues even if IC 14–2–6–3 does apply to Ladywood's property as a matter of law, issues of material fact exist as to whether he would come in under the attractive nuisance doctrine exception.

■▬▬▬ Under Indiana law, a person entering upon the land of another comes on to the land either as an invitee, a licensee or a trespasser. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639, *reh. denied.* A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him after discovering his presence. *Id.* With regard to children, however, Indiana courts have long recognized landowners may sometimes owe them a higher duty of care, even when the children are trespassers. *Lowden by Lowden v. Lowden* (1986), Ind.App., 490 N.E.2d 1143, 1144, *reh. denied.*

■▬▬▬ Two doctrines have evolved under which landowners are held to a duty to trespassers of ordinary or reasonable care on their premises. These are the attractive nuisance doctrine to which the statute refers, and the dangerous instrumentalities doctrine.[1] The attractive nuisance doctrine, which distinguishes trespassing children from trespassing adults, recognizes that the child may be incapable of understanding and appreciating all of the possible dangers which he may encounter in trespassing. 62 Am.Jur.2d *Premises Liability* § 270 and § 273 (1990).

■▬▬ The common law definition of attractive nuisance requires the following facts to be established before the exception applies: (1) The structure or condition complained of must be maintained or permitted upon the property by the owner or the occupant thereof; (2) It must be peculiarly dangerous to children and of such a nature that they will not comprehend the danger;

---

1. The dangerous instrumentalities doctrine has developed regarding dangerous conditions or agencies which could not be considered attractive nuisances. It imposes a duty to use reasonable care upon one who maintains something dangerous to children and adults alike and so exposed that there is a likelihood of their coming in contact with and being injured by it, not withstanding they may be trespassers. *Lowden,* 490 N.E.2d at 1145. This doctrine is expressed in Restatement of Torts 2d § 342. Under this theory, parental presence is immaterial when the child brings the action. *See Wright v. International Harvester Co.* (1988), Ind.App., 528 N.E.2d 837, *reh. denied, trans. denied.*

(3) It must be particularly attractive to children to play or sport thereon; (4) The owner must know, or the facts alleged must be such as to charge him with constructive knowledge of the existence of such structure or condition, and that children do or are likely to trespass upon his property and be injured by such structure or condition; and (5) The injury sustained must be the natural, probable and foreseeable result of the original wrong complained of. All the elements must be established before the doctrine applies. *Pier v. Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255, 258, *reh. denied.*[2]

 The doctrine is limited in its application to cases where the danger is latent. *Neal v. Homebuilders* (1953), 232 Ind. 160, 111 N.E.2d 280, 286, *reh. denied* 232 Ind. 160, 111 N.E.2d 713. Further, the doctrine is inapplicable to conditions either natural or artificial which are common to nature. *Lockridge v. Standard Oil Company* (1953), 124 Ind.App. 257, 114 N.E.2d 807, 810.[3]

 In the present case, the rationale underpinning the attractive nuisance doctrine has no application to the undisputed facts of this case. The immediate presence of the Kelly's father negates all of the policy reasons for shifting the duty to care for this child from his father to Ladywood. Kelly was brought to the hill by his father and supervised by his father. Under the attractive nuisance doctrine, the trespassing child must have failed, because of his youth, to discover the condition or realize the danger involved in going on to the defendant's property. 62 Am.Jur.2d *Premises Liability* § 326 (1990). As an adult, Kelly's father, not Ladywood, is charged with the care of his son and with understanding and appreciating the possible danger that snow may cover objects which would obstruct a sled's path. As a matter of law, the presence of Kelly's father precludes the application of the attractive nuisance doctrine.

Kelly did not claim he comes within any of the other exceptions of IC 14–2–6–3. He does not allege malicious or illegal acts of the owner or occupant. Furthermore, he admits the fourth sentence of the statute referring to business invitees and invited guests is not relevant to this case. The trial court correctly applied the law as it now stands to the facts. Therefore, it did not err in granting Ladywood's motion for summary judgment.

Affirmed.

MILLER and STATON, JJ., concur.

---

**2.** The attractive nuisance doctrine was the basis for § 339 of the Restatement of Torts, later modified in the Restatement (Second). The Restatement made a significant change in the doctrine by eliminating the requirement of attraction or enticement which was an integral part of the doctrine as originally formulated. Thus, liability could be found under § 339 of the Restatement although a jurisdiction had rejected the attractive nuisance doctrine. The majority of jurisdictions have adopted § 339. PROSSER ON TORTS, 4TH ED. *Trespassing Children* § 59 at 367 (1971). In 1961, our supreme court rejected an invitation to accept this section of the Restatement, finding recovery would have been denied the plaintiff even if § 339 of the Restatement was accepted. *Harness v. Churchmembers Life Insurance Co.* (1961), 241 Ind. 672, 175 N.E.2d 132.

**3.** In *United Zinc & Chemical Co. v. Britt* (1921), 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, Justice Holmes stated the attractive nuisance doctrine did not apply when the child discovers the condition after he has entered upon the defendant's property. This decision has since been overruled. *See also Best v. District of Columbia* (1934), 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882; *Eastburn v. Levin* (App.D.C.1940), 113 F.2d 176; *McGettigan v. National Bank of Washington* (D.C.Cir.1963), 320 F.2d 703. However, in the meantime it has been accepted and followed by a number of other courts. PROSSER ON TORTS 4TH ED. *Trespassing Children* § 59 at 366 (1971). It has been rejected by degrees, and only six jurisdictions, among them Indiana, still adhere to it. *Id.; See Indianapolis Motor Speedway* (1929), 88 Ind.App. 572, 165 N.E. 246 (*citing Zinc, supra*).