Jacob CARROLL, by Next Friend and Natural mother, Phyllis CARROLL; Phyllis Carroll, Individually, Appellants–Plaintiffs,

v.

JAGOE HOMES, INC. and Jagoe Homes and Construction Company, Inc., Appellees–Defendants.

No. 82A05–9608–CV–333.

Court of Appeals of Indiana.

March 19, 1997.

---

Scott Danks Evansville, for Appellants–Plaintiffs.

Michele S. Bryant, Daniel F. Hewins, Fred S. White, Evansville, for Appellees–Defendants.

## OPINION

SHARPNACK, Chief Judge.

Jacob Carroll, by his mother Phyllis Carroll, and Phyllis Carroll, individually (collectively the "Carrolls"), appeal the entry of summary judgment in favor of the defendant-appellees, Jagoe Homes, Inc. ("Homes, Inc.") and Jagoe Homes and Construction Co., Inc. ("Homes & Construction") (collectively the "appellees"). The sole issue raised for our review is whether the trial court properly entered summary judgment. We reverse and remand.

The facts most favorable to the Carrolls, the nonmovants, follow. On September 12, 1993, nine year old Jacob was severely injured in a house under construction by Homes, Inc. The property was owned by Homes & Construction.

On the day of the accident, Jacob, his brother Jesse, and a friend, David Green, went to play in the partially completed house, which was located in the boys' neighborhood. At the time of the accident, Jesse was seven years old and David was ten years old. The boys went to the house because David wanted to show Jacob "something really neat," "something like a hole." Record, pp. 52, 54.

The house had a frame and a roof, but construction workers had neither hung drywall over the insulation nor installed the garage door and the door leading from the garage to the house. The boys entered the house through the garage and immediately climbed the stairs to the second floor. Plywood flooring had been laid throughout the entire second story of the house. The flooring extended about three feet into an attic area over the garage, and the remainder of the attic consisted of beams with insulation between them. The insulation was held up by wire supports and had no flooring underneath.

David and Jacob stepped through an opening into the attic area. The area was not blocked or barricaded. David walked across several beams in the attic, before telling Jacob to follow. Jacob stepped onto the insulation and fell though the joists onto a concrete garage floor below. Jacob sustained severe injuries.

On May 24, 1995, the Carrolls filed an amended complaint for bodily injury against the appellees. On December 13, 1995, Homes, Inc. filed a motion for summary judgment. On December 27, 1995, Homes & Construction filed its motion for summary judgment. On March 19, 1996, the trial court entered summary judgment in favor of the appellees. The Carrolls now appeal.

### Standard of Review

When we review the entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't*, 493 N.E.2d 1229, 1234 (Ind.1986). We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion. Ind. Trial Rule 56(C), (H); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). The moving party in a motion for summary judgment bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind. Ct.App.1994), *reh'g denied*. Once the movant satisfies this burden, the burden shifts to the nonmoving party to produce specifically designated facts showing the existence of a genuine issue. *Id.* Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630,

633 (Ind.1991). Even if the facts are undisputed, summary judgment is inappropriate where the evidence reveals a good faith dispute as to the inferences to be drawn from those facts. *State v. American Motorists Ins. Co.*, 463 N.E.2d 1142, 1146 (Ind.Ct.App. 1984). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense which bars the plaintiff's claim. *Moore v. Sitzmark Corp.*, 555 N.E.2d 1305, 1307 (Ind.Ct.App.1990).

A negligence action is rarely an appropriate case for disposal by summary judgment. *Frye v. American Painting Co.*, 642 N.E.2d 995, 998 (Ind.Ct.App.1994). Issues of negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Jump v. Bank of Versailles*, 586 N.E.2d 873, 875 (Ind.Ct.App. 1992).

### Discussion

In their amended complaint, the Carrolls alleged that the appellees were negligent for leaving unsupported insulation in the house. A claim of negligence consists of three elements: (1) the existence of a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) damages or injury proximately caused by the breach of that duty. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994). The duty owed by a landowner to one entering his property differs according to the status of the entrant as an invitee, licensee, or trespasser. *Barbre v. Indianapolis Water Co.*, 400 N.E.2d 1142, 1145 (Ind.Ct.App.1980).

A trespasser is one who enters the landowner's property without consent, right, or invitation. *See Burrell v. Meads*, 569 N.E.2d 637, 640 (Ind.1991), *reh'g denied.* The only duty that a landowner owes to a trespasser is to refrain from willfully or wantonly injuring the trespasser after discovering his presence. *Id.* at 639.

In this case, Jacob entered the house without permission and, therefore, he was a trespasser. Under the general rule then, the landowner only owed Jacob a duty after discovering his presence. *See id.* However, two doctrines have been developed which hold a landowner to a duty of reasonable care with respect to children, even when they are trespassers. *Lowden by Lowden v. Lowden*, 490 N.E.2d 1143, 1144–1145 (Ind.Ct.App. 1986), *reh'g denied, trans. denied.* These two doctrines are the attractive nuisance doctrine and the doctrine of dangerous instrumentalities.

The parties dispute whether either of these two doctrines apply. If neither doctrine applied to the evidence designated to the trial court, then the appellees were entitled to judgment as a matter of law because the Carrolls failed to demonstrate that the appellees breached their duty to Jacob after discovering his presence on the property. *See Burrell*, 569 N.E.2d at 640. However, because we find that genuine issues of material fact exist as to whether the attractive nuisance doctrine is applicable, we hold that the trial court erroneously entered summary judgment. Further, because summary judgment was erroneously entered as to the attractive nuisance doctrine, we need not reach the issue of whether summary judgment was appropriate as to the dangerous instrumentalities doctrine. Finally, before turning to the attractive nuisance doctrine, we must first consider Homes & Construction's threshold claim that it did not maintain control of the premises and, therefore, that it did not owe any duty to any person coming onto the premises.

### Ownership Claim of Homes & Construction

On December 27, 1995, Homes & Construction filed its motion for summary judgment, arguing that it was not in control of the house in which Jacob was injured. Homes & Construction argued that Homes, Inc. was the only party involved with the construction. Homes & Construction designated the affidavit of J. Scott Jagoe, the owner of Homes, Inc., as evidence that Homes, Inc. was the builder of the house where Jacob was injured. Because Homes & Construction was not in control of the premises, it argued that it did not owe a duty to

anyone coming onto the premises, including Jacob.

On January 23, 1996, the Carrolls filed their motion, memorandum, and designation of materials in opposition to summary judgment. The Carrolls designated the following materials to the trial court: (1) the amended complaint, (2) Jacob's deposition, (3) Phyllis' deposition, (4) the affidavit of Betty Hermann, the county recorder, and attachments thereto, and (5) the affidavit of Al Folz, the township assessor, and attachments thereto. In their memorandum in opposition to summary judgment, the Carrolls claimed the township records demonstrated that Homes & Construction owned the property on September 12, 1993, the date of Jacob's accident, and that Homes & Construction did not transfer the ownership to Homes, Inc. until November 1, 1993. The Hermann affidavit was filed with the trial court on January 23, 1996, while the Folz affidavit was filed on January 30, 1996.[1]

Only a party who exerts control over the premises owes a duty to persons coming onto the premises. *See Risk v. Schilling*, 569 N.E.2d 646, 648 (Ind.1991), *reh'g denied*. The party exerting control over the land, the "possessor of land," is defined as follows:

"(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

*Id.* at 647 (quoting Restatement (Second) of Torts § 328(E) (1965)).

We find that the designated evidence demonstrates the existence of a genuine issue of material fact as to whether Homes & Construction was a possessor of land to the extent that it owed a duty to Jacob. Although Homes & Construction designated the Jagoe affidavit as evidence that Homes, Inc. was the builder of the house, and from which Homes & Construction urges this court to infer that it had no control over the property, the Folz affidavit and attachments, designated by the Carrolls, indicate that Homes & Construction owned the property on the date of the accident. Further, the attachments submitted with the Hermann affidavit show that Homes & Construction owned the property before the accident.

Because there exists a genuine issue of material fact as to whether Homes & Construction had control over the property such that it owed a duty to others, we find that summary judgment was inappropriate on this ground. *See Hermann*, 631 N.E.2d at 513.

Accordingly, we will next consider the applicability of the attractive nuisance doctrine.

**Attractive Nuisance Doctrine**

The attractive nuisance doctrine recognizes that a child may be incapable of understanding and appreciating the dangers which the child may encounter on the prem-

---

**1.** Although none of the parties addressed it, we note that on February 22, 1996, Homes, Inc. filed a motion to strike the Carrolls' memorandum in opposition to summary judgment, the designation of materials, and the Folz and Hermann affidavits because the Carrolls failed to file and serve these materials within thirty days as required by the trial rules. *See* T.R. 56(C) ("[a]n adverse party shall have thirty (30) days after service of the motion [for summary judgment] to serve a response and any opposing affidavits. . . . At the time of filing the motion or response, a party shall designate to the court [all materials] on which it relies for purposes of the motion"); *Cloverleaf Apts., Inc. v. Town of Eaton*, 641 N.E.2d 665, 667 (Ind.Ct.App.1994). Although Homes, Inc.'s motion to strike is included in the record of proceedings, the CCS reflects neither that the motion was filed nor that the trial court

ruled on it. Because Homes, Inc. filed its motion for summary judgment on December 13, 1995, the Carrolls' designated materials filed in response were not timely. However, the trial court's order of judgment reflects that it considered the memorandum in opposition and the designated materials. We find that this consideration was erroneous. Moreover, we note that on review of Homes, Inc.'s motion for summary judgment, we may not consider the untimely designated evidence.

However, the Carrolls' response, designation of materials, and affidavits were timely filed with respect to Homes & Construction's motion for summary judgment. Therefore, these materials were properly considered by the trial court, and may be considered by this court on review, to the extent that they relate to Homes & Construction's motion.

ises. *Kelly v. Ladywood Apts.*, 622 N.E.2d 1044, 1048 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* The attractiveness of a dangerous condition serves to justify the presence of children on the landowner's premises and to charge the landowner with constructive knowledge of their presence. *Lowden,* 490 N.E.2d at 1145. The doctrine applies where the following elements are established:

"(1) The structure or condition complained of must be maintained or permitted upon the property by the owner or the occupant thereof;

(2) It must be peculiarly dangerous to children and of such a nature that they will not comprehend the danger;

(3) It must be particularly attractive to children to play or sport thereon;

(4) The owner must know, or the facts alleged must be such as to charge him with constructive knowledge of the existence of such structure or condition, and that children do or are likely to trespass upon his property and be injured by such structure or condition; and

(5) The injury sustained must be the natural, probable and foreseeable result of the original wrong complained of."

*Kelly,* 622 N.E.2d at 1048–1049. The doctrine is limited to cases where the danger is latent and does not apply to conditions either natural or artificial which are common to nature. *Id.*

 The first element of the doctrine is whether the structure or condition complained of is maintained or permitted upon the owner's or occupant's property. Again, as previously discussed, there is genuine issue of material fact as to whether Homes & Construction owned the property. However, this element is satisfied with respect to Homes, Inc. because it built the attic where Jacob was injured.

The second element is whether the structure or condition is peculiarly dangerous to children and of such a nature that children will not comprehend the danger. Our supreme court has previously stated that:

"The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this reason, the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein. . . ."

*Neal v. Home Builders,* 232 Ind. 160, 111 N.E.2d 280, 286 (1953) (quoting 38 Am.Jur. § 151), *reh'g denied.* Thus, the risk of falling from a height to the ground or of falling into an excavation, pit, or ditch is considered obvious and, therefore, generally precludes the application of the doctrine. *See* 62 Am. Jur.2d § 352. However, certain exceptions have been made in cases where a dangerous condition was concealed, where the structure from which the child fell was defective, where there existed a distracting influence which made it likely that the child would not appreciate the danger, or where the child was too young to appreciate any risk. *See id.* at § 353; *see also Greene v. Di Fazio,* 148 Conn. 419, 424, 171 A.2d 411, 414 (1961) (holding that the jury could find that a nine year old boy did not realize the risk of falling from a plank over an open stairwell in a house under construction).

In the present case, the parties dispute the applicability of *Neal,* a case where three children entered a house under construction. There, the builder had set the foundation, walls, and roof, but had not installed the doors, windows, or flooring. The building was not secured with barricades or other obstruction. After the children entered the house, they climbed a stepladder, which rested on the joists at the ground level and reached the joists on the second level. One of the children, John Neal, got caught on the

stepladder as he attempted to follow the other children up the ladder. When John started to scream, his mother, Shirley Neal, heard him from their house across the street. Shirley ran to the construction site and attempted to rescue her son. In the process, Shirley lost her footing upon the joists and fell. The fall caused severe bodily injury, which led to Shirley's death ten days later. Shirley's estate sued the builders on the theory that Shirley was drawn to rescue her son, who had gotten into a position of peril because of the builders' negligence in failing to barricade the entrance to the house under construction when they knew or should have known that children were attracted to it. *Neal,* 232 Ind. at 166, 111 N.E.2d at 284.

The supreme court looked to the attractive nuisance doctrine to determine whether the son could have been drawn to the house. After reviewing the elements of the doctrine, the supreme court noted that although the partially completed house may have been attractive to the children, the estate had not alleged that the builders negligently created or maintained a latent or unsuspected danger. The court held that in the absence of such an allegation, the attractive nuisance doctrine did not apply. *Id.* at 171, 111 N.E.2d at 286. In addition, the court concluded that "[a] building under construction ordinarily does not come within the attractive nuisance rule." *Id.* As a result, the court turned to the question of whether the dangerous instrumentality doctrine applied.

Here, the parties dispute whether *Neal* is controlling. The Carrolls recognize *Neal's* holding that partially completed houses ordinarily do not constitute attractive nuisances. However, they assert that the present case involves a latent or unsuspected danger and, therefore, that the doctrine does apply. The Carrolls argue that the appellees created a "false floor" by installing the insulation between the joists in such a manner to make it appear as though the attic insulation was supported by plywood like the rest of the second floor. Although the Carrolls recog-

nize that most dangers found in a house under construction are so obvious that children should be capable of appreciating them, they maintain that the "false floor" in this case is quite different.

The appellees, relying upon *Neal,* claim that the installation of insulation is merely part of the normal construction process and is no more dangerous to children than open windows, steps without railings, or other parts of an uncompleted house. Further, they argue that the insulation was not negligently maintained, but was placed in the proper position pursuant to the construction plans. Therefore, the appellees conclude that the partially constructed house does not constitute an attractive nuisance as a matter of law. We disagree.

In *Neal,* the supreme court held only that partially constructed houses "ordinarily" do not constitute attractive nuisances; the court did not establish a *per se* rule that partially constructed houses are not attractive nuisances. In *Neal,* the plaintiff did not allege that there was a latent or unsuspected danger in the house and, as a result, the court did not have to further resolve whether the partially constructed house or any part of it was an attractive nuisance.

Unlike *Neal,* however, the Carrolls have alleged that the "false floor" constituted a latent danger. The Carrolls designated evidence to support these allegations, including Jacob's deposition.[2] In his deposition, Jacob indicated that it appeared as though there was plywood underneath the insulation in the attic. Jacob testified as follows:

"Q. What happened when you walked in there where it was dark?

A. I was standing on a piece of plywood, and [David] walked over and he said, 'Come here,' and I walked . . ., and I fell through, because I thought there were pieces of plywood under where the insulation was.

\* \* \* \* \* \*

---

2. As noted earlier, we may not consider the Carrolls' designated evidence to the extent that we review the entry of summary judgment for Homes & Construction. We may only consider the Carrolls' designated evidence as it relates to

Homes, Inc.'s motion. However, both appellees designated Jacob's deposition in support of their motions. Accordingly, we may consider Jacob's deposition without restriction.

Q. You mentioned that you saw insulation. Where was it?

A. First whenever you walked in, there was plywood, and about a yard up over the plywood, there were beams and there was insulation, and it looked like there would be some plywood up under it.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. What made you think there was plywood underneath the insulation?

A. Because this was like the thing, and the insulation was on top of it, so it looked like it was up under it."

Record, pp. 55–57.

Considering the facts most favorably to the Carrolls, the nonmovants, there is evidence sufficient to support the allegations that the appellees created a latent danger. Jacob testified that it appeared as though the insulation was supported by plywood such that the appellees created a "false floor." The appellees do not dispute the fact that the insulation was supported only by wire. We find that a jury could infer that a child of Jacob's age, knowledge, judgment, and experience would not recognize the danger presented by stepping onto the unsupported piece of insulation as it existed in the attic and, therefore, that the insulation as installed was peculiarly dangerous to children. *See Smith v. AMLI Realty Co.*, 614 N.E.2d 618, 622 (Ind.Ct.App.1993) (discussing the applicability of attractive nuisance doctrine to a weight machine). Because the undisputed facts reveal a good faith dispute as to the inferences to be drawn therefrom, summary judgment was inappropriate. *See American Motorists*, 463 N.E.2d at 1146.

The third element necessary to satisfy the attractive nuisance doctrine is whether the structure or condition is particularly attractive to children.[3] Not every potentially dangerous instrument which a child might con-

vert into a means of amusement constitutes an attractive nuisance. 62 Am.Jur. 2d, § 313 (1990). Rather, the instrumentality or condition must be of a nature likely to incite the curiosity of a child. *Id.*

The Carrolls allege it is common knowledge that children are attracted to construction sites. In contrast, the appellees allege that insulation in an attic is not particularly attractive to children. The evidence demonstrates that the three boys went to the house to see "something really neat" and to see "something like a hole." Record, pp. 52, 54. Jacob had played in the house two weeks prior to the accident and had played inside another partially constructed house a short time earlier. A jury could infer from this evidence that the partially completed house was attractive to the children. Where differing inferences can be drawn from undisputed facts, summary judgment is inappropriate. *See American Motorists*, 463 N.E.2d at 1146.

The fourth element is whether the owner knows that children do or are likely to trespass upon his property and be injured or whether the facts alleged are such as to charge the owner with constructive knowledge. We have previously held that summary judgment is inappropriate where the question remains whether the defendant had actual or constructive knowledge of a dangerous condition. *See Golba v. Kohl's Dept. Store, Inc.*, 585 N.E.2d 14, 16 (Ind.Ct.App. 1992) (holding that in the absence of undisputed evidence, the issues of whether a store in a slip-and-fall case had actual or constructive knowledge of an item on the floor is a question reserved for the jury), *reh'g denied, trans. denied.*

The Carrolls claim the appellees must have known that children did or were likely to trespass and become injured because they created the area in which Jacob was injured.[4]

---

**3.** We note that the Restatement of Torts (Second) § 339 eliminated the requirement of attraction or enticement from the doctrine. *See Kelly*, 622 N.E.2d at 1049 n. 2. Although many jurisdictions adopted § 339, our supreme court has rejected this portion of the Restatement. *Harness v. Churchmembers Life Ins. Co.*, 241 Ind. 672, 175 N.E.2d 132, 135 (1961).

**4.** To establish that the appellees had actual knowledge, the Carrolls rely upon Homes, Inc.'s statement in the answer to the amended complaint that, "[it] admits that children did come upon the premises ... and that the Defendant by or through its agents and employees knew of the practice of children to do so." Record, p. 35. Although not raised by the appellees, we note that the answer to the amended complaint was

The facts alleged by the Carrolls are such that a genuine issue of material fact exists as to whether the appellees should be charged with constructive knowledge that children would trespass upon the property and be injured. Again, Jacob testified in his deposition that he had previously played at the same house two weeks before the accident and that he had played with friends in another house a short time earlier. The house was not barricaded or fenced. Because a jury could infer that the presence of children at the house prior to the accident should have put the appellees on notice, summary judgment was inappropriate. *See id.*

The final element necessary to constitute an attractive nuisance is that the injury sustained is the natural, probable, and foreseeable result of the alleged wrong. Because the appellees do not dispute this element, we need not consider it further.

### Conclusion

Although the trial court may not believe that the nonmoving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct.App.1995), *trans. denied.* In this case, several disputes exist as to the inferences to be drawn from the undisputed facts. Therefore, we hold that the trial court erroneously entered summary judgment.

For the foregoing reasons, we reverse the entry of summary judgment and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

RUCKER and DARDEN, JJ., concur.

not designated by either party. Because we may only consider those portions of the pleadings which are designated to the trial court, *see* T.R.

56(C), we may not consider Homes, Inc.'s answer as evidence of the appellees' actual knowledge.