James CUNNINGHAM and Lisa Cunningham, Individually and as parents and next friend of Justin Cunningham, a minor, Appellants–Plaintiffs,

v.

BAKKER PRODUCE, INC., and Andy Dobosz d/b/a Andy's Tree Service, a sole proprietorship, and Timothy Magurany d/b/a Maggy's Tree Service, Appellees–Defendants.

No. 45A03–9811–CV–462.

Court of Appeals of Indiana.

May 19, 1999.

Debra Lynch Dubovich, Levy & Dubovich, Highland, Indiana, Attorney for Appellants.

Michael M. Oberman, Bruce P. Clark & Associates, Munster, Indiana, Attorney for Appellees.

**OPINION**

BAKER, Judge

Appellants-plaintiffs James and Lisa Cunningham, individually as parents and as next friends of Justin Cunningham, a minor (the Cunninghams), appeal from the trial court's grant of summary judgment in favor of appellees-defendants Bakker Produce, Inc., Andy Dobosz d/b/a Andy's Tree Service, and Timothy Magurany d/b/a Maggie's Tree Service (collectively, Bakker). Specifically, the Cunninghams argue that the trial court erred in granting summary judgment where there are genuine issues of fact regarding the applicability of the Indiana Recreational Use Statute [1] (the IRUS) and its exception for attractive nuisances. Furthermore, the Cunninghams argue that the trial court erred in striking the two affidavits filed in opposition to the motion for summary judgment, and in finding that the Cunninghams' memorandum in opposition failed to sufficiently cite to the affidavits for the purpose of satisfying Indiana Trial Rule 56(C).

**FACTS**

The facts most favorable to the Cunninghams reveal that Bakker owned a parcel of

[1] IND.CODE § 14–22–10–2.

unimproved land in Griffith, adjacent to its business premises and near a residential area where the Cunninghams lived. In August 1995, Bakker retained Magurany and his tree removal service to remove limbs from a tree on the unimproved property, and directed Magurany to "cut the limbs and to leave them where they fell." Record at 376. The limbs were eight to ten feet long. R. at 371. Bakker intended to remove them but did not do so for approximately one week because he was busy. R. at 373. On September 2, 1995, a group of children went to the property to play baseball, as they had in the past. The group consisted of the Cunningham children, Erick, age 13; Jason, age 12; Josh, age 8; and Justin, age 6; as well as a cousin, David Nowack, age 12. The boys discovered that one of the limbs was left on the base path that they traditionally used. Two of Justin's older brothers, Erick and David, attempted to remove the limb, and Justin attempted to help. The boys warned Justin to stay away because the limb was heavy. However, Justin slipped and fell underneath the limb, which then fell from his brothers' arms, fracturing Justin's skull. Justin subsequently developed meningitis, which resulted in permanent deafness in both ears.

The Cunninghams brought a personal injury action on July 31, 1996, and, on May 12, 1998, Bakker filed a motion for summary judgment, alleging that the IRUS shielded Bakker from liability. In response, the Cunninghams filed a memorandum in opposition to the motion for summary judgment, including two affidavits. In the first, Dr. Beth Rom–Rhymer, a psychologist, attested to her credentials and stated that a child of Justin's age could not appreciate "the danger associated with the movement of heavy tree limbs." R. at 430. In the second, Dr. Caskey, who has a Ph.D. in "park and playground planning, safety, construction, and operation," R. at 441, testified that debris such as heavy tree limbs are commonly removed immediately after being cut down because of the particularly dangerous threat which they pose to children. R. at 442. Bakker made a motion to strike the affidavits, asserting that there was no foundation establishing the two witnesses' credentials in the appropriate fields.

In its October 1, 1998 order, the trial court granted Bakker's motion to strike the affidavits of the Cunninghams' expert witnesses and granted summary judgment to Bakker. The court found that Justin was a licensee "at most" on Bakker's property, that Bakker was thus protected by the IRUS and that the attractive nuisance exception in the statute did not apply to the case. R. at 480. The trial court further found that the Cunninghams' memorandum in opposition to summary judgment failed to cite to portions of the affidavits with adequate specificity to satisfy the requirements of T.R. 56. The Cunninghams now appeal from the grant of summary judgment.

## DISCUSSION AND DECISION

### I.   Standard of Review

■■■      When reviewing a decision regarding summary judgment, this court stands in the shoes of the trial court. Smith v. Standard Life Ins. Co. of Indiana, 687 N.E.2d 214, 216 (Ind.Ct.App.1997). We will resolve all doubt in favor of the non-moving party. Colonial Penn. Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind.1997). We affirm a grant of summary judgment only if there are no genuine issues as to any determinative material fact. See Hale v. Kemp, 579 N.E.2d 63, 65 (Ind.1991). Summary judgment is rarely appropriate in negligence actions; however, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. T.R. 56(C); McCormick v. State, 673 N.E.2d 829, 832 (Ind.Ct.App.1996).

### II.   Applicability of Recreational Use Statute

The Cunninghams make several arguments against the applicability of the IRUS which formed the basis of the trial court's grant of summary judgment. First, they argue that the statute does not protect landowners from suit regarding injuries caused by their own negligence, but rather protects them from the acts of third persons. Secondly, the Cunninghams argue that the children's use of Bakker's field to play baseball was not an activity similar to the statute's listed uses, "hunting, fishing, swimming, trapping, camping, hiking, sightseeing," and, therefore, the IRUS does not apply here. Thirdly, the Cunninghams argue that, even if

the IRUS does apply, there is a question of fact regarding the applicability of the attractive nuisance exception.

We first note the provisions of the IRUS:

(d) A person who goes upon or through the premises, including caves, of another:

  (1) with or without permission; and

  (2) either:

    (A) without the payment of monetary consideration; or

    (B) with the payment of monetary consideration directly or indirectly on the person's behalf by an agency of the state or federal government;

for the purpose of hunting, fishing, swimming, trapping, camping, hiking, sightseeing or any other purpose does not have an assurance that the premises are safe for the purpose.

(e) The owner of the premises does not:

  (1) assume responsibility; or

  (2) incur liability;

for an injury to a person or property caused by an act or failure to act of other persons using the premises.

(f) This section does not affect the following:

(1) Existing Indiana case law on the liability of owners or possessors of premises with respect to the following:

  (A) Business invitees in commercial establishments.

  (B) Invited guests.

(2) The attractive nuisance doctrine.

(g) This section does not excuse the owner or occupant of premises from liability for injury to a person or property caused by a malicious or an illegal act of the owner or occupant.

I.C. § 14–22–10–2.

### A. Does the IRUS Excuse Landowner's Own Negligence?

Taking the Cunningham's contentions in order, we consider first the argument that the IRUS does not protect landowners from liability for their own negligence. Specifically, the Cunninghams point to the statutory language stating that a landowner is not liable under the IRUS for "an act or failure to act of other persons using the premises," and assert that the IRUS thus does not protect landowners from their own negligence.

The purpose of the IRUS is to encourage landowners to open their property to the public for recreational purposes free of charge. *McCormick,* 673 N.E.2d at 833. By denying certain persons legal recourse for personal injury or property damage, the IRUS is in derogation of common law and must accordingly be strictly construed against limiting the claimant's right to bring suit. *Drake by Drake v. Mitchell Community Schools,* 649 N.E.2d 1027, 1029 (Ind.1995). The term "acts of others," as set forth in I.C. § 14–22–10–2(e), has been deemed by our supreme court to expressly apply "only with respect to the conduct of others."[2] *Id.* at 1030. The supreme court concluded that the IRUS does not create immunity from liability for the premises owner with regard to his own actions. *Id.* Thus, we regard as settled the interpretation of the IRUS which the Cunninghams offer. However, we find the question it settles irrelevant to the facts of this case.

Here, the facts compel the conclusion that the acts of Justin's brothers, third persons in relation to the victim and the landowner, caused Justin's injury. Nothing in the record suggests that Justin played upon the limbs left on the land by Bakker and sustained his injury in that fashion. If there were any such suggestion, we would consider the duty toward Justin which Bakker would owe.[3] Instead, the designated evi-

---

**2.** In *Drake,* the supreme court interpreted I.C. § 14–2–6–3, which was replaced by I.C. § 14–22–10–2 in 1997. For the purposes of review in this case, there are no meaningful differences between the two versions of the IRUS.

**3.** Even if Bakker owed a duty to Justin, it would be defined by Justin's status as an entrant upon the land. *See Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). The facts clearly show that Justin was a licensee, as the trial court found; that is, he entered upon the land for his own convenience, curiosity, or entertainment. *See Frye v. Trustees of Rumbletown Free Methodist Church,* 657 N.E.2d 745, 749 (Ind.Ct.App.1995). The duty owed by Bakker

dence demonstrates that the two oldest Cunningham siblings decided to lift and remove a limb so that they could play a game on exactly the same area of the lot which they had used before. R. at 288. They recognized that the limb was heavy and warned Justin away from it as they lifted it. R. at 29, 312. As Justin began to move away, he slipped and fell; at the same time, the limb slipped from the older boys' hands and fell on top of Justin. R. at 55–60, 293–94, 29–31.

We do not want to minimize the very unfortunate injuries suffered by Justin, a boy only six years of age. However, it is precisely liability for these types of tragic events from which the land owner is protected under the IRUS. Bakker tolerated the public's use of his vacant lot, and it is precisely this sufferance which the IRUS was designed to encourage. *See McCormick,* 673 N.E.2d at 833.

### B. Whether Baseball is a Purpose Covered by the IRUS

■ The Cunninghams next contend that baseball is not an activity in the same category as "hunting, fishing, swimming, trapping, camping, hiking, [or] sightseeing," which are all the activities explicitly listed in the IRUS. They seek to distinguish baseball from the listed activities by arguing that the listed activities are non-competitive sports, carried on in rural areas. Appellant's brief at 18. Furthermore, the Cunninghams state that baseball is an "organized group activity which one cannot play alone." Appellant's brief at 20.

Our supreme court has held that, where we must determine the meaning of the phrase "for any other purpose," found in the IRUS following the specifically listed activities, we apply the principle of *ejusdem generis,* which maintains that "where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute." *Drake by Drake,* 649

N.E.2d at 1030 (citing *Thompson v. Thompson,* 259 Ind. 266, 275–76, 286 N.E.2d 657, 662–63 (1972)).

Case law indicates that the phrase "any other purpose" in I.C. § 14–22–10–2 embraces boating. *See McCormick,* 673 N.E.2d at 833–34 (under the IRUS, owner of reservoir not liable for the death of boater whose boat fell into spillway). The phrase also includes sledding. *Kelly v. Ladywood Apartments,* 622 N.E.2d 1044, 1048 (Ind.App.1993), *trans. denied* (under the IRUS, owner of apartment building not liable for injury to child sledding on apartment grounds). In contrast, activities falling outside of those contemplated by the IRUS include a high school student's decorating an abandoned silo and then performing there in a "haunted house" production. *Drake by Drake,* 649 N.E.2d at 1030 (owner of silo failed to establish that plaintiff's activities were subject to the IRUS).

If we were to accept the Cunninghams' argument, a camping trip during which the participants held an impromptu baseball game would yield the following: the owner would be protected by the IRUS during the camping phase and yet not protected when the same licensees on his land stepped up to the plate. Surely, the principle of *ejusdem generis* does not require us to split categories so finely or so arbitrarily. We can only conclude, on the basis of case law, that baseball falls into a category with other outdoor recreational activities such as sledding and boating, and that the IRUS thus applies to the case.

### C. The Attractive Nuisance Exception

■ Finally, the Cunninghams contend that the IRUS's exception for the attractive nuisance doctrine applies to this case. The attractive nuisance doctrine recognizes that a child may be incapable of understanding and appreciating the dangers which the child may encounter on a landowner's premises. *Carroll by Carroll v. Jagoe Homes, Inc.,* 677 N.E.2d 612, 617 (Ind.Ct. App.1997), *trans. denied.* The doctrine applies where several elements are met: 1) the

would thus be to refrain from willfully or wantonly injuring Justin or acting in a manner to increase his peril, including the duty to warn Justin of any latent danger on the premises. *See McCormick,* 673 N.E.2d at 836.

problem complained of must be maintained or permitted upon the property by the owner; 2) it must be peculiarly dangerous to children, and of such a nature that they will not comprehend the danger; 3) it must be particularly attractive to children; 4) the owner must have actual or constructive knowledge of the condition, and that children do or are likely to trespass, and to be injured; and 5) the injury must be a foreseeable result of the wrong. *Id.* The doctrine is limited to cases where the danger is latent. *Id.* It does not apply to conditions, natural or artificial, which are common to nature. *Id.*

In the instant case, the condition at issue is limbs lying in a field. It does not matter whether the limbs fell or were cut down because the attractive nuisance doctrine does not apply to either natural or artificial conditions found in nature. *Kelly,* 622 N.E.2d at 1048–49. This factor distinguishes the Cunninghams' case from the case which they cite in support, *Smith v. AMLI Realty,* 614 N.E.2d 618 (Ind.Ct.App.1993). In *Smith,* a child playing with the weights on a Universal weight machine suffered a crushed hand when another child removed the counterweight of her own body from the machine, thus causing the machine's heavy weights to fall on the first child. *Id.* at 619. This court found that there was a question of fact as to whether the dangers posed by the machine were recognizable to a child. *Id.* at 622. Here, the Cunninghams contend that Justin likewise did not appreciate the weight of the limb in question. However, unlike a weight machine, a limb on the ground is a condition commonly found in nature, and the attractive nuisance doctrine thus does not apply.

### II. Stricken Affidavits and Pleading with Specificity

The Cunninghams next contend that the trial court erred in striking the affidavits of the two expert witnesses which they had called upon. Dr. Rom–Rhymer stated in her affidavit that a child of Justin's age would not appreciate the dangers of lifting heavy limbs. R. at 430. Dr. Caskey stated in his affidavit that heavy tree limbs should be removed because of the dangerous threat they pose to children. R. at 442. However, in light of our discussion above, we need not review this issue. Our conclusions of law render irrelevant the arguments in both affidavits.

Therefore, the trial court's ruling is at worst harmless error.

Likewise, the issue of whether the Cunninghams cited to the record with sufficient specificity is moot, given our analysis, as the designated evidence fails to support their substantive contentions. In summary, the undisputed facts in this case demonstrate that the IRUS applies to protect Bakker from liability by the acts of third parties. To the extent that Bakker had any duty to Justin, a licensee, Bakker fulfilled the duty. The limb which the boys on the lot attempted to remove was a condition commonly found in nature and, thus, the attractive nuisance exception does not apply. For all of the above reasons, we find that the trial court did not err in granting summary judgment.

Judgment affirmed.

RUCKER, J., and BROOK, J., concur.