Jayla **MORNINGSTAR and Robert Mendez, Individually and as Next Friends of Corbin Mendez, a minor, Appellants–Plaintiffs,**

v.

Brian **MAYNARD and Elizabeth A. Maynard, Appellees–Defendants.**

No. 01A05–0305–CV–224.

Court of Appeals of Indiana.

Nov. 21, 2003.

Paul R. Sturm, Brian M. Simpson, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, Attorneys for Appellants.

Dane L. Tubergen, P. Michael Miller, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Jayla Morningstar ("Jayla") and Robert Mendez, individually and as next friends of Corbin Mendez ("Corbin"),[1] filed a tort claim against Brian and Elizabeth Maynard in Adams Circuit Court. The trial court granted summary judgment in favor of the Maynards. The Plaintiffs appeal, raising the issue of whether the doctrine of attractive nuisance may be asserted in this case. Concluding as a matter of law that the plaintiffs cannot prevail on the theory of attractive nuisance, we affirm.

### Facts and Procedural History

In the spring of 2000, the Maynards bought a fourteen-foot circular trampoline and installed it at their home. On October 4, 2001, Jayla, and her seven-year-old son Corbin, went to visit her father, who lived near the Maynards. While there, Corbin asked and received permission from his step-grandmother, Jenny Morningstar ("Jenny"), to go outside with his uncle, ten-year-old Perry Morningstar ("Perry"), to play on the Maynard's trampoline. Because Brian was away—due to his sister's death—and Elizabeth was in Ohio on work-related matters, the Maynards were not home while Corbin and Perry were using their trampoline.

Jenny could see Corbin and Perry, as well as two other neighbor children, jumping and playing on the trampoline. Appellee's App. p. 4. Shortly thereafter, Jenny heard Corbin crying, looked out her window, and saw him on the ground near the

---

1. Collectively referred to herein as "the Plain-    tiffs."

trampoline. Allegedly, all four children simultaneously were jumping on the trampoline; as a result, Corbin was catapulted from the trampoline and fell to the ground, causing injury.

Through the trampoline's owner's manual and expert deposition testimony, the Plaintiffs submitted evidence indicating that it is not safe for more than one person to jump on the trampoline at the same time and that many backyard trampoline-related injuries occur when there are multiple users bouncing at the same time. The Plaintiffs further allege that the Maynards had constructive knowledge of this danger, knew or should have known that neighborhood children might use their trampoline without permission, and did not take reasonable steps to prevent injury.

The Maynards moved to dismiss the Plaintiffs' claims by way of summary judgment. The trial court granted the Maynards' motion, and the Plaintiffs now appeal.

### Discussion and Decision

■ When reviewing the grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Catt v. Bd. of Comm'rs*, 779 N.E.2d 1, 3 (Ind.2002). Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *Id.* Summary judgment is rarely appropriate in negligence cases. *Crossno v. State*, 726 N.E.2d 375, 381 (Ind.Ct.App.2000) (citing *Jump v. Bank of Versailles*, 586 N.E.2d

873, 875 (Ind.Ct.App.1992)). However, when the question is one of the plaintiff's visitor status, the issue is a matter of law and is proper for summary judgment. *Jump*, 586 N.E.2d at 875.[2]

■ The first step in resolving premise liability cases is to determine the plaintiff's visitor status, which defines the duty owed by the landowner. A person enters the land of another either as an invitee, licensee, or trespasser. *Harris v. Traini*, 759 N.E.2d 215, 222 (Ind.Ct.App.2001), *trans. denied.* A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him or her. *Kelly v. Ladywood Apartments*, 622 N.E.2d 1044, 1048 (Ind.Ct.App.1993) (citing *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991)). However, with regard to children, Indiana courts long have recognized that landowners may sometimes owe a higher duty of care, even when the children are trespassers. *Id.* (citing *Lowden v. Lowden*, 490 N.E.2d 1143, 1144 (Ind.Ct.App.1986)).

■ The attractive nuisance doctrine recognizes that a child may be incapable of understanding and appreciating all of the possible dangers that may be encountered in trespassing. *Id.* (citing 62 Am.Jur.2d Premises Liability §§ 270, 273 (1990)).

The attractive nuisance doctrine applies when the problem complained of is (1) maintained or permitted upon the property by the owner; (2) particularly dangerous to children, and of such a nature that they will not comprehend the danger; and (3) particularly attractive to children. *Cunningham v. Bakker Produce, Inc.*, 712 N.E.2d 1002, 1007 (Ind. Ct.App.1999), *trans. denied.* Further, (4) the owner must have actual or constructive knowledge of the condition, and that children do or are likely to trespass, and to be injured; and (5) the

---

**2.** The Plaintiffs concede that, if the doctrine of attractive nuisance is inapplicable to the case at bar, there is no need to address the issue of negligence. Br. of Appellants at 21.

injury must be a foreseeable result of the wrong. However, the doctrine is limited to cases where the danger is latent.

*City of Indianapolis v. Johnson,* 736 N.E.2d 295, 299 (Ind.Ct.App.2000). Thus, if the doctrine of attractive nuisance applies to this case, the Maynards owed Corbin a heightened duty of care; if the doctrine does not apply, the Maynards only were required to refrain from willfully or wantonly injuring Corbin.

The policy reasons behind the attractive nuisance doctrine include the consideration that children may not be mature enough to understand the dangers associated with trespassing and the latent dangers associated with the objects in question. *See Kelly,* 622 N.E.2d at 1049. *Kelly* stated:

> [The child] was brought to the hill by his father and supervised by his father. Under the attractive nuisance doctrine, the trespassing child must have failed, because of his youth, to discover the condition or realize the danger involved in going on to the defendant's property. 62 Am.Jur.2d premises liability § 326 (1990). As an adult, [the child's] father, not [the landowner], is charged with the care of his son and with understanding

and appreciating the possible danger ... As a matter of law, the presence of Kelly's father precludes the application of the attractive nuisance doctrine.

*Id.*

In the case at bar, Jenny, as Corbin's supervising step-grandmother, assumed the responsibility of understanding the dangers involved when she gave Corbin permission to use the Maynards' trampoline and witnessed Corbin and the other children jumping on the trampoline before Corbin's injury.[3] Thus, as with *Kelly,* the permission of Corbin's supervising adult—who is deemed capable of and responsible for understanding the dangers of trespassing and latent conditions—precludes the applicability of the doctrine of attractive nuisance.[4]

### Conclusion

The doctrine of attractive nuisance is inapplicable to the case at bar.

Affirmed.

NAJAM, J., and ROBB, J., concur.

---

3. The Plaintiffs assert that the case at bar is distinguishable from *Kelly* because Jenny's supervision over Corbin was not as extensive as the child's supervision in *Kelly*—the father was physically present with the child in *Kelly* whereas Jenny merely was able to see Corbin from her window. We consider this to be an insignificant distinction. Indeed, it would be a strange rule of law to increase an absentee landowner's duty to a trespassing child based solely on the supervisory shortcomings of the adult who gave the child permission to trespass and use the object in question.

4. The Maynards also assert, citing persuasive authority, that a trampoline is not an attractive nuisance, because a trampoline's dangers are not latent. The Plaintiffs respond by arguing that the trampoline itself is not the latent danger, but rather the "catapult effect"

caused by several children simultaneously jumping on the trampoline is the latent danger—thus, using the child's specific use of the trampoline to sidestep any possible *per se* rule that trampolines are not attractive nuisances. Such reduction of the causation of an injury to a level a child would not readily comprehend could turn any object into an attractive nuisance. Because a child will often know that an object might cause harm but will not know the mechanics of or specific ways an object might harm, the adoption of such an argument would substantially expand the doctrine of attractive nuisance. Despite our rejection of this argument, we conclude the issue of whether a trampoline is an attractive nuisance *per se* to be an issue worthy of further litigation and confine our holding solely to *Kelly's* application to the case at bar.